[No. F004677. Fifth Dist. Nov. 5, 1986.]

ERNEST M. McKEE, JR., Plaintiff and Appellant, v.
BELL-CARTER OLIVE COMPANY, Defendant and Respondent.

COUNSEL

Harland & Gromala, Thomas Becker and Geri Anne Johnson for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Walter R. Allan, Reginald D. Steer, Donald J. Putterman and Robert C. Phelps for Defendant and Respondent.

OPINION

AZEVEDO, J.*—

### STATEMENT OF THE CASE AND OF THE FACTS

On May 12, 1980, Ernest McKee, Jr. (hereafter plaintiff), filed an action against Bell-Carter Olive Company (hereafter defendant) alleging five causes of action: (1) breach of contract, (2) fraud, (3) price fixing in violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.), (4) conversion, and (5) breach of the implied covenant of good faith and fair dealing.

*Assigned by the Chairperson of the Judicial Council.

Plaintiff, an olive grower, based all causes of action on the alleged failure of defendant, an olive processor, to pay plaintiff for olives delivered to defendant for processing in the years 1976, 1977 and 1978. The contract provided defendant was to pay plaintiff "[m]arket price plus 5% bonus on gross fruit value," and plaintiff alleged that the prices he actually received from defendant fell below the contract price by more than $100 per ton in 1976, more than $50 per ton in 1977, and more than $300 per ton in 1978. Plaintiff sought general and compensatory damages of $306,373 and punitive damages of $2 million.

Plaintiff subsequently amended his complaint (1) dropping the allegations of a Cartwright Act violation; (2) limiting allegations of defendant's breach of contract to events in 1978; and (3) joining, after certification by the court, the class of approximately 181 California olive growers who had contracts with defendant during the 1978 growing season.

On April 20, 1984, defendant moved for summary judgment alleging the court was without jurisdiction because plaintiff had failed to exhaust his administrative remedies pursuant to Food and Agricultural Code section 55401 et seq.[1] Plaintiff opposed the motion based on the unavailability of damages under the statutory framework, i.e., the Director of the Bureau of Marketing Enforcement (hereafter Director) was not empowered to award monetary damages. Following defendant's reply and argument of the motion before the trial court, the trial court granted defendant's motion for summary judgment on July 9, 1984, and plaintiff appeals from the ensuing judgment dismissing his complaint.

DISCUSSION

In granting defendant's motion for summary judgment, the trial court rejected all three of the arguments with which plaintiff opposed defendant's motion. Thus, the trial court concluded (1) the relevant provisions of the code did provide plaintiff with an adequate administrative remedy; (2) the administrative remedy was exclusive; and (3) arguments of waiver, estoppel, and/or irreparable harm were inapplicable to defeat defendant's motion.

Since the question presented in this appeal is one of law, this court is not bound by the trial court's construction of either statutory or decisional law; rather, this court brings to bear its independent judgment. (See *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69

---

[1] All further statutory references are to the Food and Agricultural Code unless otherwise indicated.

Cal.2d 713, 724 [73 Cal.Rptr. 213, 447 P.2d 325]; *Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].)

## I.

Plaintiff contends (1) the applicable statutory provisions provide only for punishment of the processor and do not afford a remedy to the grower and (2) that an available remedy need not be exhausted if irrelevant to a plaintiff's claim. Plaintiff basically contests the availability of an administrative remedy in the first place and its adequacy, if available, to redress his injury. On these issues, we believe the trial court was correct in determining that an adequate administrative remedy was available to plaintiff.

█ Foundationally, it is beyond question that in California an adequate and available administrative remedy must be exhausted, barring certain exceptions, before a plaintiff will be permitted to seek judicial redress of his grievance or injury. This is the doctrine of exhaustion of administrative remedies, and in California failure to satisfy this doctrine is a jurisdictional defect. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715].) The Supreme Court recently affirmed the doctrine in *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654, 661-662 [221 Cal.Rptr. 488, 710 P.2d 288]. (See also *Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 384 [216 Cal.Rptr. 733, 703 P.2d 73], in which the court stated, "[t]hough the issue of exhaustion of administrative remedies is not raised by the parties, it is a condition to the court's jurisdiction which must be addressed before turning to petitioner's contentions" (citation omitted); *Browning-Ferris Industries* v. *City Council* (1986) 181 Cal.App.3d 852, 859 [226 Cal.Rptr. 575].) Moreover, an available administrative remedy must be exhausted even if its availability is couched in permissive language. (See this court's opinions in *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533]; *People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 58 [21 Cal.Rptr. 875].)

As the court noted in *Kane* v. *Redevelopment Agency* (1986) 179 Cal.App.3d 899, 906, footnote 3 [224 Cal.Rptr. 922], "'[T]he principal purpose of the doctrine of exhaustion of administrative remedies is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review. [Citation omitted.]' [Citation omitted.]" A somewhat more expansive discussion of the rationale underlying the exhaustion doctrine appears in *County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 73-74 [222 Cal.Rptr. 750]. There the court stated in part: "The doctrine of exhaustion of administrative remedies, it has been held, is not a matter of judicial discretion but is a

fundamental rule of procedure. [Citation omitted.] 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' [Citation omitted.] When no exception applies, the exhaustion of an administrative remedy is a jurisdictional prerequisite to resort to the courts. [Citation omitted.] The cases which so hold are legion. [Citations omitted.] As Witkin explains it, '[t]he administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy has been held *jurisdictional* in California.' (3 Witkin [Cal. Procedure (3d ed. 1985)] Actions, § 234, p. 265; italics in original.) But before the doctrine can be said to be jurisdictional it must first apply to the case at issue. . . . '[T]he doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the administrative agency cannot grant an adequate remedy, and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be.' [Citations omitted.]"

■  Thus, the first of two questions which must be addressed is the availability of an administrative remedy. Contrary to plaintiff's contentions, it is clear the applicable statutory provisions do provide such an administrative remedy which encompasses resolution of disputes such as the one between plaintiff and defendant herein.

The regulation of processors of farm products comprises chapter 6 of division 20 of the California Food and Agricultural Code, starting with section 55401. The statutory framework encompasses not only licensing of processors and of agents but also codifies two procedures by which a producer or grower of farm products may recover payment for those products from the processor. Commencing with section 55631, the statute outlines the procedure for attachment and execution of a producer's lien on farm products in the possession and control of the processor to the extent of the agreed price. The lien attaches at the time the product is delivered to the processor (§ 55632) and has preference over all other liens except those for labor claims or warehouseman's liens. (§ 55633.) A producer may institute a lawsuit to enforce the lien (§ 55636) or may maintain a personal action to recover the underlying debt. (§ 55647.)

More pertinent to the instant proceeding, however, is the procedure outlined by which the Director is empowered to respond to complaints made by producers against processors. Section 55721 states that the Director "on his own motion may, or on a verified complaint shall, make examinations and audits of the books and records of any processor which pertain to the solvency of such processor, or to the purchase, or to the handling and accounting for, of any farm product which is purchased or received on a pack-out or other basis from the producer of such farm product. . . ." If the Director finds evidence that any provision of the chapter has been violated, including failure or refusal to pay for farm products (§ 55872), he is empowered to issue a complaint against the processor/licensee. Section 55741, subdivision (a), provides that the Director "upon his or her own motion may, or upon the verified complaint of any interested party shall, investigate, examine, or inspect any transaction which involves the failure of the processor to make payment for any farm product within the time which is specified for payment in the contract of sale and purchase between the producer and the processor, in accordance with the terms of the contract or in accordance with this chapter."

Should the Director fail to effect a settlement between the processor and the producer, he is empowered by section 55745 to notice a hearing for resolution of the dispute. At the hearing the Director has the power to "[a]dminister oaths, and take testimony," "[i]ssue subpoenas requiring the attendance of witnesses before him, together with such books, memoranda, papers, and other documents, articles, or instruments as may be pertinent to the controversy as set forth in the complaint," and "[c]ompel the disclosure by such witnesses of all facts known to them relative to the controversy." (§ 55747.) At the conclusion of the hearing the Director may dismiss the complaint if he finds no violation, but if he is persuaded that the processor/licensee has violated any of the statutory provisions, the Director "may issue an order which suspends or revokes the processor's license or places such license under such probationary terms and conditions as may be necessary to obtain compliance with the provisions of this chapter by such licensee." (§ 55749.)

A detailed procedure for such hearings is set forth at sections 55781-55788, including a provision that the processor who chooses not to testify in his own behalf may nevertheless be called and examined as if under cross-examination. (§ 55787.) A similarly detailed statutory framework appears at sections 55841-55851 for the suspension or revocation of a processor's license, and section 55851 provides: "Any order which suspends or revokes a license may, within the discretion of the director, be made conditional upon the settlement, adjustment, or satisfaction of the consequences of any violation which is specified, and the operation of such an order may be

deferred for such purpose. Any such order may contain provisions for modification or dismissal of the order upon presentation to the director of evidence that the matter of complaint has been settled, adjusted, or withdrawn at any time before such order becomes final." Sections 55901-55906 outline criminal penalties for violations of the chapter, including section 55903 which states that "[i]t is a misdemeanor for any person that is subject to this chapter to willfully refuse to pay for any farm product which such person purchases . . . ." Civil penalties including injunction and fine are found at sections 55921 and 55922. (See also Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) Department of Agriculture, § 5.30, pp. 297-298.)

Thus, plaintiff could have sought to resolve his payment dispute with defendant administratively by filing a complaint with the Director. Upon receiving such complaint, the Director is obligated to investigate and, if a resolution cannot be achieved, to bring both plaintiff/producer and defendant/processor to a hearing at which witnesses can be called and examined, documents can be ordered produced for examination, and testimony of the parties taken. Assuming at the end of such hearing plaintiff's claim were deemed valid, the Director has the statutory power to suspend defendant's processing license until such time as defendant pays to plaintiff the money plaintiff is due.

This precise procedure was utilized in *Almaden-Santa Clara Vineyards* v. *Paul* (1966) 239 Cal.App.2d 860 [49 Cal.Rptr. 256]. Upon its determination that Almaden had failed to pay one Vogel, a grape producer, in full and according to the terms of the contract, the Director issued an order suspending Almaden's processing license. The trial court granted Almaden's petition for a writ of mandate ordering the Director to set aside that order; the appellate court reversed and upheld the disciplinary action taken by the Director as the result of Almaden's nonpayment for the grapes it obtained from Vogel. Noting a variety of enforcement or punitive measures available to the Director, the court stated in part: "[T]he clear legislative intention and purpose behind the above-mentioned sections is that the producers shall be assured full payment for their farm products, that the director has jurisdiction to take disciplinary action against processors for their failure to pay for such products regardless of any dispute between the processors and the producers over such alleged nonpayment, and that the director's jurisdiction to take disciplinary action is not lost or diminished because of any dispute except in the single instance and under the conditions prescribed by section 1300.3 [now section 55742] where the dispute has been submitted to arbitration." (*Id.* at pp. 870-871.)

Therefore, plaintiff's arguments that these statutes provide only a punitive or exemplary remedy, not one relevant to his claim for monetary damages,

must fail. It is certainly true, as both plaintiff and defendant recognize, that despite this broad statutory framework, the Director has no authority to award damages directly. Both plaintiff and defendant acknowledge this apparently stems from the decision of the California Supreme Court in *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620 [91 P.2d 577] interpreting the Milk Stabilization Act. Under the act, the Director of Agriculture, having determined that a milk distributor had failed to pay the milk producer, could "'make an order directing the offender to make reparation and pay to such person complaining such amount. . . .'" (*Id.* at p. 651.) The court found that to the extent the statute granted such authority to the Director, it violated the doctrine of separation of powers and was thus unconstitutional. Although no challenge had been made to the similar provisions of the Processor's Act (equivalent to the statutes discussed herein), both statutory procedures were amended following the *Jersey Maid* decision, eliminating the Director's power to award damages.

Nevertheless, sections 55749 and 55851 make clear that once the Director has determined a producer is entitled to payment from a licensed processor, the Director may indirectly compel compliance with such an order by conditioning suspension of the processor's license upon payment of the money due the producer. Setting aside for the moment plaintiff's claims for damages in excess of the contract price, resort to the statutory remedy would have sufficed to make plaintiff whole, i.e., to attain for him the properly computed contract price for his olives. Thus while the statutory procedure is facially punitive, its effect is to provide an administrative remedy clearly relevant to plaintiff's claim. Notwithstanding the Director's inability to directly order the payment of damages, the Director's power to conditionally suspend a processor's license until payment of reparations is made is the practical equivalent of such power and, in fact, the most power which can constitutionally be afforded the Director in light of the decision in *Jersey Maid Milk Products Co.* v. *Brock, supra.* The detailed procedure outlined by the statutes makes clear the Director's power is more than mere investigatory power without any procedural mechanism by which the person aggrieved can obtain relief. (Cf. *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 565-568 [55 Cal.Rptr. 505, 421 P.2d 697]; *Lachman* v. *Cabrillo Pacific University* (1981) 123 Cal.App.3d 941 [177 Cal.Rptr. 21].)

Plaintiff relies heavily on *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406 [118 Cal.Rptr. 680] and *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994 [110 Cal.Rptr. 470]. However, the holdings in those cases are not dispositive here. In both of those cases the appellate court found the administrative remedy provided by Insurance Code section 790.09 irrelevant to an independent action for damages against an insurance company. Insurance Code section 790.09 is part of the Unfair

Practices Act and provides: "No order to cease and desist issued under this article directed to any person or subsequent administrative or judicial proceeding to enforce the same shall in any way relieve or absolve such person from any administrative action against the license or certificate of such person, *civil liability* or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." Both the *Shernoff* and *Greenberg* courts concluded that the limited punitive power afforded by that section, i.e., issuance of a cease-and-desist order which could only operate prospectively and not retroactively to cure past harm, was irrelevant in an action for damages against the insurance companies for past unfair practices. The broad statutory powers accorded to the Director by the Food and Agricultural Code summarized above go well beyond the issuance of a cease-and-desist order directed to future misconduct.

Moreover, to the extent *Shernoff, supra,* and *Greenberg, supra,* hold that an administrative remedy which does not provide for the recovery of damages is irrelevant in an action for monetary recovery, the continuing viability of these two cases is questionable in light of the Supreme Court's decision in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410]. There, a doctor whose staff privileges had been revoked by the hospital brought an action for damages based on various traditional torts. The doctor was not seeking reinstatement to the hospital. Nevertheless, the Supreme Court concluded that a plaintiff in those circumstances would be required to exhaust available administrative remedies, even private, nonstatutory ones, based on numerous policy considerations. Those include (1) the possible elimination or mitigation of damages by exhaustion of administrative remedies, (2) deference to the expertise of the administration's quasi-judicial tribunal and, (3) "[f]inally, even if the absence of an internal damage remedy mak[ing] ultimate resort to the courts inevitable [citation omitted], the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Id.* at p. 476.) This court followed *Westlake Community Hosp.* v. *Superior Court, supra,* in *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 317 [159 Cal.Rptr. 416].

Therefore we conclude that section 55741 et seq. provides an available administrative remedy to plaintiff, an olive producer who contends that defendant, a processor as statutorily defined, failed to compensate him in accordance with the terms of their contract.

## II.

Having determined that plaintiff had available to him an administrative remedy, the trial court would have no jurisdiction to proceed with plaintiff's

suit for damages *if* the doctrine of exhaustion of administrative remedies applies. ■ The doctrine is applicable if the administrative remedy is exclusive; however, plaintiff is not required to exhaust an administrative remedy if it is cumulative to other, judicial remedies. As the Supreme Court pointed out in *City of Susanville* v. *Lee C. Hess Co.* (1955) 45 Cal.2d 684, 689 [290 P.2d 520]: "'It is, of course, well settled that where an administrative remedy is provided by statute relief must be sought from the administrative body and the remedy exhausted before the courts will act; and that a court violating the rule acts in excess of jurisdiction. [Citation omitted.] It is equally well settled that where a statute provides an administrative remedy and also provides an alternative judicial remedy the rule requiring exhaustion of the administrative remedy has no application if the person aggrieved and having both remedies afforded him by the same statute, elects to use the judicial one. [Citations omitted.] . . .'" (See also *Muir* v. *Steinberg* (1961) 197 Cal.App.2d 264, 268-270 [17 Cal.Rptr. 431].)

The key to this question is found at section 55437, part of the general provisions governing the division. Denominated "Cumulative remedies; conflicting laws," the statute provides, "The rights, remedies, and penalties which are provided for in this chapter are *in addition to* any other rights, remedies, or penalties which are provided for by law, and any acts or parts of acts in conflict therewith are hereby repealed." (Italics added.) We are not persuaded by defendant's characterization of this clause as a "savings clause," because as plaintiff has pointed out, a specific "savings clause" is found at section 55439. However, given the strong presumption in favor of administrative remedies which is apparent in California decisional law, it is not enough to merely point to section 55437, denominate plaintiff's administrative remedy cumulative, and end the matter in plaintiff's favor. However, resort to appropriate decisional law does bear out that result.

We begin with *Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736 [13 Cal.Rptr. 201, 361 P.2d 921], in which the Supreme Court considered an individual's challenge to his exclusion from a race track based on a statute permitting exclusion of persons deemed to be of immoral character or whose activities were detrimental to the sport. In determining that the statute also provided an administrative remedy which the plaintiff had failed to exhaust (Bus. & Prof. Code, § 19561.5, now Bus. & Prof. Code, §§ 19572 and 19573), the Supreme Court rejected the plaintiff's argument that the administrative remedy was only cumulative and not exclusive. The court distinguished *Jewett* v. *City Transfer & Storage Co.* (1933) 128 Cal.App. 556, 559 [18 P.2d 351], and *Estate of Ward* (1932) 127 Cal.App. 347, 354 [15 P.2d 901], on which the plaintiff relied. In *Jewett* the court had concluded the common law warehouseman's lien for unpaid storage charges was cumulative to the statutory right afforded under the Warehouse Receipts Act

(now see Cal. U. Com. Code, § 7201 et seq.). Similarly, in *Ward*, the court had concluded the common law power of a testator to confer upon his or her executor the right to continue a business was cumulative to later-enacted statutory rights in the Code of Civil Procedure and the Probate Code. The court in *Flores* noted these cases were authority "only for the proposition that where a statutory remedy is provided for the enforcement of a preexisting *common-law* right, the newer statutory remedy will be considered only cumulative." (*Flores, supra,* at p. 747.)

A recent case highlights the distinction between a statutory remedy which does not codify an existing common law right and is therefore, at least initially, exclusive, and a statutory remedy which is cumulative to a common law cause of action. In *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953 [201 Cal.Rptr. 379] a class of plaintiffs sought recovery of damages from various physician's organizations and insurance companies for increased medical care costs incurred by plaintiffs because of defendants' inflation of medical malpractice premium rates. The court rejected plaintiffs' reliance on *Shernoff* v. *Superior Court, supra,* 44 Cal.App.3d 406, and *Greenberg* v. *Equitable Life Assur. Society, supra,* 34 Cal.App.3d 994, since those cases arose under the Unfair Practices Act. That act also provided the administrative remedy afforded did not relieve or absolve the insurer of civil liability which might attach based on the sorts of misleading, deceptive, and fraudulent conduct proscribed by the act.

In contrast, the area in which the plaintiff's claim arose in *Karlin*, the setting of premium rates, was an area governed by the McBride Act (Ins. Code, § 1850 et seq.) which "compris[ed] a pervasive and self-contained system of administrative procedure for the monitoring both of insurance rates and the anticompetitive conditions that might produce such rates." (*Karlin* v. *Zalta, supra,* at p. 983.) Unlike situations in which the statutory and common law remedies are cumulative, leaving the plaintiff free to choose the remedy he prefers, there was no common law cause of action providing monetary damages for illegal price-fixing such as the McBride Act effected in the insurance industry. The administrative remedy provided by the act was exclusive, not cumulative, particularly in light of the expertise the administrative agency could bring to bear on the plaintiff's grievance. Thus, the plaintiff in *Karlin* v. *Zalta, supra,* was jurisdictionally required to exhaust her administrative remedies before resorting to the courts. Although defendant in the instant case might argue that the common law did not provide for the suspension of a food processor's license, the basis for the statutory provision, i.e., the need to insure payment to producers for the food they supply to be processed, can be satisfied by a common law action for breach of contract, one requiring little, if any, particularized agency expertise.

Our determination that plaintiff's administrative remedy in this case was cumulative to his right to seek legal redress is borne out by the language of section 55437 itself, specifically use of the phrase "in addition to." The Supreme Court in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513] sought to ascertain the legislative intent behind use of this phrase. In *Vasquez* consumers as a class sought relief against defendant, and defendant objected to maintenance of a class action suit pursuant to Code of Civil Procedure section 382 when relief was available under the then recently enacted Consumers Legal Remedies Act, Civil Code section 1750 et seq. At the time of suit, Civil Code section 1752 provided in pertinent part, "The provisions of this title are not exclusive. The remedies provided herein shall be in addition to any other procedures or remedies provided for in any other law." The Supreme Court concluded that "[s]ignificantly, the act provides in section 1752 that its provisions are not exclusive, that the remedies provided therein shall be in addition to any other procedures or remedies provided for in any other law, and that nothing in the act shall limit any other statutory or any common law rights to bring class actions." (*Vasquez* v. *Superior Court, supra,* at p. 818.)[2]

Of course section 55437, added by Statutes 1967, chapter 15, does not contain the phrase found in Civil Code section 1752 (added by Stats. 1970, ch. 1550, § 1), to wit: "The provisions of this title are not exclusive." However, apart from that, the statutes are virtually identical, and, as plaintiff in the instant case has argued, both statutes are remedial and thus entitled to a liberal construction. Interestingly enough, even prior to the revisions of the Food and Agricultural Code in 1967, the court in *Almaden-Santa Clara Vineyards* v. *Paul, supra,* 239 Cal.App.2d 860 seems implicitly to recognize that relief by way of the Director's disciplinary powers is not the

---

[2]That the Supreme Court correctly interpreted the legislative intent behind Civil Code section 1752 is also evidenced by the 1975 amendment of that statute to "reiterate that the remedies provided therein for violation of, or for conduct proscribed by, the acts are in addition to any other procedures or remedies for such violation or proscription provided for in any other law." (Legis. Counsel's Dig., Stats. 1975, ch. 615.) With the amending language emphasized, that statute now provides: "The provisions of this title are not exclusive. The remedies provided herein *for violation of any section of this title or for conduct proscribed by any section of this title* shall be in addition to any other procedures or remedies *for any violation or conduct* provided for in any other law.

"Nothing in this title shall limit any other statutory or any common law rights of the Attorney General or any other person to bring class actions. Class actions by consumers brought under the specific provisions of Chapter 3 (commencing with Section 1770) of this title shall be governed exclusively by the provisions of Chapter 4 (commencing with Section 1780); *however, this shall not be construed so as to deprive a consumer of any statutory or common law right to bring a class action without resort to this title. If any act or practice proscribed under this title also constitutes a cause of action in common law or a violation of another statute, the consumer may assert such common law or statutory cause of action under the procedures and with the remedies provided for in such law.*" (Italics added.)

exclusive remedy for an aggrieved grower or producer. In concluding that the Director had properly suspended Almaden's processor's license, the court stated in part that "since the Director was clearly empowered to take disciplinary action against Almaden, the issues raised on judicial review of his action do not dissolve because the contracting parties may have independent civil remedies available to them." (*Id.* at p. 871.) In fact, in the excerpt of the deposition of Donald Wilbur Fultz, Chief of the Bureau of Market Enforcement of the Department of Food and Agriculture, filed by plaintiff in opposition to defendant's motion for summary judgment, Fultz testified that growers who pursue their administrative remedies are advised of their rights to pursue a civil action for monetary damages and sometimes pursue these rights simultaneously.

Other courts have reached a similar conclusion. For example, in *Eastwood* v. *Superior Court* (1983) 149 Cal.App.3d 409, 416-417 [198 Cal.Rptr. 342], the court held that California's long-standing recognition of a common law right of privacy, including recognition of a cause of action based on commercial appropriation, "'*complemented* legislatively . . . Civil Code section 3344, adopted in 1971.' [Citation omitted.]" The section referred to, of course, codifies a cause of action for unpermitted use of another's name, likeness, etc., for advertising or soliciting purposes. (See also *Barela* v. *Superior Court* (1981) 30 Cal.3d 244, 250-251 [178 Cal.Rptr. 618, 636 P.2d 582]; *Glaser* v. *Meyers* (1982) 137 Cal.App.3d 770, 774-776 [187 Cal.Rptr. 242], holding that the statutory enactment of Civil Code section 1942.5, concerning retaliatory eviction, was cumulative to a tenant's common law right to defend an unlawful detainer action based on retaliatory eviction;[3] *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 134-135 [142 Cal.Rptr. 325].)

We recognize that all of the cases discussed above balanced case against case, i.e., whether the right to bring a lawsuit under one statute precluded a lawsuit under another statute or under settled principles of common law. Here, however, we are called upon to balance an administrative hearing against a court procedure. ■ As discussed above, the Supreme Court has pointed out that the policy underlying the exhaustion of administrative remedy doctrine encompasses not only an expeditious resolution of the damage issue, hopefully leading to an ultimate reduction or mitigation of such damage, but the policy also acts to relieve overburdened courts of matters more properly handled by a tribunal whose specific expertise particularly equips it to decide the matter in question.

---

[3]Civil Code section 1942.5, subdivision (h), is again virtually identical to the provision under discussion, Food and Agricultural Code section 55437. Civil Code section 1942.5, subdivision (h), provides that "[t]he remedies provided by this section shall be in addition to any other remedies provided by statutory or decisional law."

However, the court in *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015], relying in part upon the old common law/new cause of action test of *Flores* v. *Los Angeles Turf Club, supra,* 55 Cal.2d 736, held that an employee, who alleged his termination was in retaliation for a complaint made of unsafe working conditions, need not exhaust the administrative remedies available under Labor Code section 6312, provisions of the Division of Occupational Safety and Health of the Department of Industrial Relations (Cal-OSHA). "'[W]here a new right,—one not existing at common law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy is exclusive of all others. [Citations.]' (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 112 [180 P.2d 321, 171 A.L.R. 913].) But '[i]f a right was established at common law or by statute before the new statutory remedy was created, the statutory remedy is usually regarded as merely cumulative, and the older remedy may be pursued at the plaintiff's election. [Citations.]' (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 8, p. 886.)" (*Hentzel* v. *Singer Co., supra,* at p. 301.)

The court concluded the employee's complaint "does not depend upon a private right of action implied by OSHA, but upon a right of action which existed independent of OSHA and which, we conclude, the Legislature did not intend to destroy." (*Hentzel* v. *Singer Co., supra,* at p. 303.) Drawing in part on the failure of Labor Code section 6312 to constitute a comprehensive system of administrative enforcement "indeed, it provides for no administrative remedy, other than the maintenance by an administrative agency of a lawsuit on behalf of the complaining employee" (*ibid.*), the court found no legislative intent to preclude an employee from bringing a suit on his own behalf. The court compared the provisions of Cal-OSHA to those under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), as well as certain remedial provisions available to employees who suffer discrimination as a result of filing a claim under workers' compensation. (*Hentzel* v. *Singer Co., supra,* 138 Cal.App.3d at p. 303, fn. 9.) Because these other statutes encompassed power in the director to remedy the underlying problem, i.e., to enforce a solution that would restore to the complaining party all he had lost, the court noted that "exhaustion of remedies . . . may well be required." (*Ibid.*)

There is, of course, a distinction between an administrative remedy which can make a plaintiff whole again *without* the award of damages and one which cannot directly compensate the plaintiff for the economic losses he has suffered. However, it is necessary to keep in mind the underlying policies which are advanced by the exhaustion of administrative remedies doctrine. In *Kane* v. *Redevelopment Agency, supra,* 179 Cal.App.3d 899, the court noted: ". . . such a balancing of competing factors typifies difficult questions

of exhaustion. . . . '[T]he major factors that affect an exhaustion decision may be easily identified. Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy. [¶] Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors.' [Citation.]" (*Id.* at p. 907, fn. 4.) Virtually all of these factors reflect recognition that many agencies have developed special expertise within that area the agency has been created to serve. When this is so, and when a comprehensive procedural framework exists satisfying the requirements of due process and is available to resolve controversies arising in that area, the efficacy of an administrative proceeding, gauged by a weighing of these factors, is obvious.

However, when a statute, even one establishing an administrative framework, merely codifies a cause of action recognized and maintainable at common law, many of those policy considerations diminish in significance. For example, the instant case is one arising from breach of contract, with additional allegations of fraud, breach of the implied covenant of good faith and fair dealing, and conversion, all of which frequently arise in actions for breach of contract by virtue of thorough pleading. Going one step further, the value of the contract depends upon determination of what constituted the market price for olives in 1978. There is nothing in the instant complaint that differs in any way from breach of contract actions depending on determination of market price which arise in the judicial system day in and day out. Moreover, as plaintiff has pointed out, if a processor chooses to ignore an order that he pay a producer according to the terms of a disputed contract and, despite loss of a license, the processor refuses to pay, a court will have to spend time on this matter when the plaintiff seeks a judgment he can enforce. Even if it can be resolved fairly simply based on the agency's prior adjudication, the case must still enter the judicial pipeline, one of the results the exhaustion doctrine was intended to avert.

The trial court made little comment on plaintiff's contention that his administrative remedy was cumulative to that afforded by other statutes and/ or the common law. Noting that the language "does not expressly provide

that a judicial remedy may be concurrently pursued," the court accepted defendant's characterization of section 55437 as a savings clause. In this the trial court erred. Relying upon the rule articulated by *Flores* v. *Los Angeles Turf Club, supra,* 55 Cal.2d 736, we conclude that the remedy provided by section 55741 et seq. is cumulative to plaintiff's existing common law right to bring an action against defendant for breach of contract. Under these circumstances, plaintiff is not required to exhaust his administrative remedies, and the trial court erred in granting defendant's motion for summary judgment.

Having found that plaintiff's complaint is cumulative to the state administrative scheme set out under the Food and Agricultural Code, there is no need to address plaintiff's arguments that he is in some manner exempt from the requirement that he exhaust his administrative remedy.

The judgment is reversed. Plaintiff shall recover his costs on appeal.

Hanson (P. D.), Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied December 2, 1986, and respondent's petition for review by the Supreme Court was denied February 25, 1987.