**Jonquil FROYD, Plaintiff,**

v.

**Richard COOK, et al., Defendants.**

**Civ. No. S–86–1169 LKK.**

United States District Court,
E.D. California.

March 15, 1988.

David C. Anton, Oakland, Cal., for plaintiff.

Laurence I. Angelo, Bolling, Walter & Gawthrop, Sacramento, Cal., for defendants.

## ORDER

KARLTON, Chief Judge.

Plaintiff, a former dispatcher for the City of Rio Vista Police Department, brought this action alleging sexual harassment and a retaliatory constructive discharge. She predicated the jurisdiction of this court upon 28 U.S.C. § 1343, and appends to her 42 U.S.C. §§ 1983, 1985 and 1986 claims a variety of state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Among those claims, she alleges that she was constructively discharged in retaliation for reporting to the appropriate city officials that she was sexually harassed by a sergeant in the department. Defendants have brought a motion for summary judgment attacking each of plaintiff's causes of action. This published decision will be limited [1] to a consideration of the defendants' attack upon plaintiff's state "wrongful discharge" cause of action, asserting that it is preempted [2] by California's Fair Employment Housing Act ("FEHA"), California Government Code sections 12920, et seq.[3]

The narrow question that is tendered is whether plaintiff's cause of action sounding in tort, and described under the rubric "wrongful discharge," has been displaced by FEHA.[4] Two questions are thus tendered: (1) does plaintiff allege a cause of action within the "wrongful discharge" doctrine, and (2) is it displaced by FEHA? [5]

---

1. My reasons for limiting publication to a particular issue are explained in *Kouba v. Allstate Ins. Co.,* 523 F.Supp. 148, 151 n. 2 (E.D.Cal. 1981), *rev'd on other grounds,* 691 F.2d 873 (1982).

2. Both plaintiff and defendants describe the problem as one of preemption. Such a description, while it is in accordance with conventional nomenclature, appears inaccurate to me. Preemption implicates notions of a hierarchal character, i.e., federal law preempts state law, or state law preempts county ordinances. The real question at bar is one of exclusive remedy or displacement, i.e., did the legislature in enacting a particular statute intend to provide an exclusive remedy and thus displace the common law cause of action. For the sake of clarity, this opinion will describe the problem as one of "displacement," rather than preemption.

3. Ordinarily, this court would not publish an opinion which exclusively resolves a matter of state law. Nonetheless, this particular question has been addressed in published opinions by a number of judges in the Northern District of California; since I must respectfully disagree with them, it appears that publication is not inappropriate. Moreover, the issue is a recurring problem for district judges because claims such as those considered in the opinion are routinely appended to Title VII and section 1983 claims.

4. Defendants also challenge plaintiff's theory of constructive discharge, contending that plaintiff's proof does not satisfy the requirements of *Nolan v. Cleland,* 686 F.2d 806, 812–13 (9th Cir.1982). Defendants' arguments in this regard raise factual questions and cannot be resolved on summary judgment.

5. I have very recently articulated my understanding of the standards applicable to motions for summary judgment, *see Bhan v. NME Hospitals, Inc.,* 669 F.Supp. 998, 1004–06 (1987), and no useful purpose would be served by reiterat-

## I

### WRONGFUL DISCHARGE

By California statute, employment contracts, absent an express term, are terminable at will. California Labor Code section 2922.[6] The California courts, however, have developed three distinct legal theories falling within the rubric of "wrongful discharge," which constitute exceptions to the statute's provisions. A person who has been discharged despite one of the three exceptions has an action lying in tort, contract, or both. The three branches of California's doctrine are briefly described below.

First, persons who have been retaliatorily terminated for reasons which violate the state's public policy may maintain a tort cause of action in wrongful discharge against their employers. *See Tameny v. Atlantic Richfield Company*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980) (plaintiff states a cause of action in wrongful discharge where he alleges that he was terminated because of his refusal to participate in an illegal scheme to fix retail gasoline prices); *Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (discharge of an employee who refused to commit perjury at the insistence of his employer found to be contrary to public policy); *Hentzel v. Singer Company*, 138 Cal.App.3d 290, 188 Cal.Rptr. 159 (1982) (employee discharged for protesting hazardous working conditions states a claim within the rule of *Tameny* and *Petermann*).

A second branch of the "wrongful discharge" doctrine arises where an employee is terminated in violation of the implied in law covenant of good faith and fair dealing.

A defendant breaches the implied covenant of good faith and fair dealing found in all contracts where an employee is discharged without just cause, but instead for "extra contractual reasons," and considerations of the plaintiff's job longevity, the " 'common law of the job' " (as, for instance, expressed by the employer's written employment policies), or the existence of separate consideration limit the employer's right to fire to instances " 'for cause or with economic consideration.' " *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 455, 168 Cal.Rptr. 722 (1980) (citation omitted); *see also Crossen v. Foremost–McKesson, Inc.*, 537 F.Supp. 1076, 1078 (N.D.Cal.1982). While the California Supreme Court has failed to specifically pass on this formulation of the tort of wrongful discharge, it has indicated that it views the appellate cases so holding with favor. *See Tameny*, 27 Cal.3d at 179 n. 12, 164 Cal.Rptr. 839, 610 P.2d 1330; *see also Seamans Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 769 n. 6 (1984).

Finally, the term "wrongful discharge" may indicate that an employee has been terminated in violation of implied contractual rights. While as noted above, California employment contracts are generally terminable at will in the absence of any express provision indicating their duration, the employer's conduct may nevertheless give rise to an implied promise that it will not terminate an employee absent good cause. *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 329, 171 Cal.Rptr. 917 (1981).[7]

Even at this late date in the life of this case, and the motion for summary judgment, it is not entirely clear under which

---

ing them here. I note that the question of displacement is a pure question of law and thus susceptible to resolution on summary judgment.

**6.** California Labor Code section 2922 provides "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."

**7.** The *Pugh* court held that the grant of a nonsuit was in error where there were facts from which a jury could determine the existence of such an implied promise. Thus, in *Pugh*, plaintiff's evidence concerning the duration of employment, the commendations and promotions he received, the apparent lack of any direct criticism of his work, the assurance he was given of continued employment, and the employer's acknowledged policies of refraining from arbitrary employment decisions were sufficient to require that the issue be decided by a jury. *Id.* at 329, 171 Cal.Rptr. 917.

branch of the doctrine plaintiff claims—it may be that she claims under all three.[8] Thus, plaintiff claims that by virtue of California's Prohibition against employment discrimination and retaliatory discharge, her discharge was in violation of California public policy. Alternatively, she appears to be claiming that by virtue of that same policy her termination was without "good cause," despite the policies of her employer guaranteeing an only "good cause" discharge. Finally, she may be claiming that by virtue of her four years of employment, the employment policies of the City and the totality of the circumstances, there was an implied contract of employment, and discharge under the circumstances alleged violated that contract.

The first question is whether a discharge motivated either by gender discrimination or in retaliation for complaining about sexual harassment violates California's public policy and thus gives rise to a claim for wrongful discharge. Although the answer may seem self-evident, one California Court of Appeals has "decline[d] to extend the tort concept of breach of implied covenant of good faith and fair dealing into the field of racial discrimination in employment," *Robinson v. Hewlett-Packard Corporation*, 183 Cal.App.3d 1108, 1125, 228 Cal.Rptr. 591 (1986), while another has held that a retaliatory discharge also does not state common law claims. *Ficalora v. Lockheed Corp.*, 193 Cal.App.3d 489, 238 Cal.Rptr. 360 (1987). Both cases are premised on the notion that plaintiff's claims are displaced by FEHA. *See Robinson*, 183 Cal.App.3d at 1125, 228 Cal.Rptr. 591, and *Ficalora*, 193 Cal.App.3d at 492–93, 238 Cal.Rptr. 360. I must first consider the effect of those cases upon my power to independently consider the question of whether the instant claim is displaced by FEHA. To do so, I address below the effect of the decisions of California appellate courts on federal district courts considering California causes of action pendant to federal claims.

It is, of course, clear that the pronouncements of the California Supreme Court as to California law are binding on this court. *Minnesota ex rel. Pearson v. Probate Court*, 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940). "When the California Supreme Court has not spoken, California Courts of Appeal decisions are data for determining how the highest California court would rule." *Scandinavian Airlines System v. United Aircraft Corporation*, 601 F.2d 425, 427 (9th Cir.1979). Despite the fact that California Courts of Appeal decisions are not binding, *see Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), in the absence of other evidence, state court of appeals decisions cannot simply be ignored. *West v. AT & T Company*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). As I explain below, relevant California precedent concerning the construction of remedial statutes convinces me that the *Robinson* and *Ficalora* courts are in error. Accordingly, I decline to follow them.[9] Put anoth-

---

**8.** Plaintiff captioned the relevant causes of action in her complaint as "Breach of Covenant of Good Faith and Fair Dealing." Clearly such a characterization is not dispositive. The federal rules do not permit legal argument in the complaint, but rather require a short and plain statement of the grounds for relief, Fed.R.Civ.P. 8, and thus plaintiff's characterization of her complaint is surplusage. Moreover, the rules specifically provide for the granting of the relief the facts demonstrate, whatever the pleading may pray for, Fed.R.Civ.P. 54(c).

**9.** I note in passing that the binding character of California Courts of Appeal decisions upon state courts is relatively weak. Thus, under California's system of stare decisis, the various district courts of appeal are not bound by the opinions of their sister courts, or indeed, even by decisions of panels of the same court of appeal. *Los Angeles Police Protective League v. City of Los Angeles*, 163 Cal.App.3d 1141, 1147, 209 Cal. Rptr. 890 (1985); *Geffen v. County of Los Angeles*, 197 Cal.App.3d 188, 242 Cal.Rptr. 492 (1987). Moreover, when different panels of the court of appeal differ, California superior courts are free to select the opinion they regard as better reasoned. *People v. Stamper*, 195 Cal. App.3d 1608, 1613, 241 Cal.Rptr. 449 (1987), *citing Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 456, 20 Cal.Rptr. 321, 369 P.2d 937 (1967); *McCallum v. McCallum*, 190 Cal. App.3d 308, 315 n. 4, 235 Cal.Rptr. 396 (1987); *and see* 9 Witkin, *California Procedure* § 772 at 740–41 (3d ed. 1985). Obviously, a federal district court need give no greater weight to intermediate appellate decisions than the superior

er way, the relevant California precedent constitutes "other evidence" of such persuasive character that I am unable to follow the state courts of appeal' decision. Before assessing the affect of FEHA on such claims, however, it is necessary to first establish that such claims would, but for FEHA, constitute claims for wrongful discharge.[10]

In *Tameny*, the Supreme Court of California held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." 27 Cal.3d at 170, 164 Cal.Rptr. 839, 610 P.2d 1330. The Court further held that the public policy may be established either by the common law or in statutory form. *Id.* at 172–74, 164 Cal.Rptr. 839, 610 P.2d 1330.

■ In the instant case, plaintiff alleges that she was constructively discharged either because she was the victim of sexual harassment, or in retaliation for her reporting her victimization, or both. California's fundamental law prohibits employment discrimination because of sex. California Constitution, art. I, section 8; *Sail'er Inn, Inc. v. Kirby*, 5 Cal.3d 1, 95 Cal.Rptr. 329, 485 P.2d 529 (1971).[11] Moreover, the right of public employees to complain about the conditions of their employment without fear of retaliation is well established under California's decisions. *See Bagley v. Washington T. Hospital District*, 65 Cal. 2d 499, 55 Cal.Rptr. 401, 421 P.2d 409 (1966) (ongoing threat to discharge based on political activity adverse to public employer); *Belshaw v. Berkeley*, 246 Cal.App. 2d 493, 54 Cal.Rptr. 727 (1966) (suspension for letter to editor criticizing superiors). *See also Adcock v. Board of Education*, 10 Cal.3d 60 (1973). Thus, except insofar as the claim may be displaced by FEHA, it appears certain that if plaintiff was discharged for being the victim of sexual harassment or complaining about that fact, she states a claim under the *Tameny* doctrine.

## II

## DISPLACEMENT

I now turn to the question of whether plaintiff's common law cause of action in "wrongful discharge" has been displaced by the California Legislature's adoption of FEHA. I begin, as I must, with the words of the statute.[12] The legislature provided that FEHA did not displace preexistent statutory rights. The statute provides "[n]othing contained in this part shall be deemed to repeal any of the provisions of the civil rights law or of any other law of this state, relating to discrimination because of ... sex." Cal.Gov't Code § 12993(a).[13] Another subsection of the

---

court of the state does. *See* 1A Pt. 2 J. Moore, Moore's Federal Practice ¶ 0.310 at 3135 (2d ed. 1987).

**10.** I need consider here only the public policy branch of California's "wrongful discharge" doctrine. A discharge in violation of the state's public policy certainly would be without "good cause" within the meaning of *Cleary*. That is to say all *Tameny* discharges also violate *Cleary*, though the reverse is not necessarily so. Moreover, it is undisputed that defendants' regulations permit discharge only for cause.

**11.** Article I, section 8, presently reads: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed or national or ethnic origin." The original constitutional provision related to sex exclusively. Although no California case appears to have addressed the question in terms of the California constitutional provision, the courts have gener-

ally recognized that sexual harassment is a form of sexual discrimination. *See, e.g., Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (Title VII); *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180 (7th Cir.1986) (42 U.S.C. § 1983, equal protection clause).

**12.** Although it is clear that the California courts do not apply the "plain meaning rule" with the fervor of federal courts, *see Silver v. Brown*, 63 Cal.2d 841, 845, 48 Cal.Rptr. 609, 409 P.2d 689 (1966), nonetheless, the starting place for a court's construction of a California statute is the language used. *People ex rel. Woods v. Sands*, 102 Cal. 12, 16, 36 P. 404 (1894); *People v. Chambers*, 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972).

**13.** Plaintiff has also brought an action directly under California Constitution, art. I, section 8. It has long been held that California's Constitution is "self-executing," *Winchester v. Howard*,

same statute makes clear the legislature's intent to preempt local ordinances. Cal. Gov't Code § 12993(c). The statute is silent, however, on its relationship to common law claims. The statute's affirmative preservation of statutory rights may suggest that its silence should be construed as a sign of legislative intent to displace nonstatutory rights. On the other hand, it is equally reasonable to argue that the legislature's specific preemption of local ordinances suggests that the common law causes of action were not affected by FEHA. As I explain, however, either method of implying legislative intent from the structure of the statute is unnecessary, given California's doctrine of cumulative remedies.

California's courts have developed a very specific method of construing the relationship between remedial statutes and preexisting common law rights. As the leading commentator on California law puts the doctrine, "[i]f a right was established at common law or by statute before the new statutory remedy was created, the statutory remedy is usually regarded as merely cumulative, and the older remedy may be pursued at the plaintiff's election." 3 Witkin, *California Procedure* § 8 at 39 (3d ed. 1985); *see also Hentzel v. Singer Company*, 138 Cal.App.3d 290, 303, 188 Cal.Rptr. 159 (1982) ("Generally, 'where a statutory remedy is provided for the enforcement of a preexisting common law right, the newer statutory remedy will be considered only cumulative.'") *Id., quoting Flores v. Los Angeles Turf Club*, 55 Cal.2d 736, 747, 13 Cal.Rptr. 201, 361 P.2d 921 (1961). Thus, in *Hentzel*, the court found that plaintiff stated a cause of action when he alleged that he had been dismissed for attempting to obtain a "smoke-free environment." The court held that a complaint asserting

such a retaliatory dismissal alleged a common law cause of action for wrongful discharge which was not displaced by the California Occupational Safety and Health Act ("Cal–OSHA"), Labor Code section 6300 et seq. That is, the court found a statute which preexisted Cal–OSHA protected an employee's right to complain concerning unhealthy working conditions. The previous statute was seen as embodying the state's policy and thus a right to sue under the *Tameny* branch of California's wrongful discharge doctrine preexisted the passage of Cal–OSHA. Under such circumstances, the court concluded that Cal–OSHA's remedies were merely cumulative. *See also McKee v. Bell–Carter Olive Co.*, 186 Cal.App.3d 1230, 231 Cal.Rptr. 304 (1986) (California Food & Agriculture §§ 55401, et seq., cumulative to common law action for breach of contract).

Although recognizing the authority of *Hentzel*, and conceding the well-fixed standards of California statutory construction noted above, another district of the California Court of Appeals has held that FEHA was the sole remedy for age discrimination. *Strauss v. A.L. Randall Company*, 144 Cal.App.3d 514, 194 Cal.Rptr. 520 (1983).[14] The *Strauss* court's reasoning was premised on a rule of statutory construction related to the *Hentzel* rule, that "[w]here a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided." *Palo Alto–Menlo Park Yellow Cab Company v. Santa Clara County Transit District*, 65 Cal.App.3d 121, 131, 135 Cal.Rptr. 192 (1976). The *Strauss* Court held that prior to enactment of FEHA, California law did not prohibit age discrimination in employment, and accordingly, the plaintiff in *Strauss* was limited to a FEHA claim.[15]

136 Cal. 432, 64 P. 692 (1901); *Rose v. California*, 19 Cal.2d 713, 719, 123 P.2d 505 (1942), and thus plaintiff may bring the action directly under the constitutional provision. Although a letter brief from defendants subsequent to argument casts doubt of the matter, the court does not understand defendants to have moved for summary judgment on the direct constitutional claim asserting FEHA has displaced it. If defendants do so claim, the provisions of section 12993 meet and overcome the claim.

**14.** FEHA also prohibits discrimination based upon age. California Government Code section 12941.

**15.** *Cancellier v. Federated Stores*, 672 F.2d 1312 (9th Cir. 1 1982), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), is not to the contrary. The plaintiffs there prevailed under the *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981) line of cases, and thus, as the court explained, "[t]hese claims do

The *Strauss* court distinguished *Hentzel* on the basis that in the latter case, the court of appeal had "identified a long-standing state policy in favor of promoting a safe and healthful work environment. This policy pre-dated the enactment of a statutory remedy. Thus, the availability of a statutory remedy did not destroy [the] common law remedy." *Strauss*, 144 Cal. App.3d at 519, 194 Cal.Rptr. 520.

In holding that FEHA created new rights, the *Strauss* court seized upon certain language in *Gay Law Students Association v. Pacific Tel. & Tel. Co.*, 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592 (1979). There, the California Supreme Court observed that "the prohibitions on employment discrimination contained in the FEPA are in no sense declaratory of preexisting common law doctrines, but rather include areas of subject matters of legislative innovation, creating new limitations on the employer's right to hire, promote, or discharge its employees." *Id.* at 490, 156 Cal.Rptr. 14, 595 P.2d 592. Relying on the same language, Judge Aguilar has also concluded that FEHA displaced a wrongful discharge claim based on age discrimination, *Mahoney v. Crocker National Bank*, 571 F.Supp. 287 (N.D.Cal.1983)[16], and *Strauss* has been relied upon by other federal courts as well. *See Salgado v. Atlantic Richfield Company*, 823 F.2d 1322, 1327 (9th Cir.1987) (age discrimination); *Baker v. Kaiser Aluminum & Chemical Company*, 608 F.Supp. 1315, 1322 (N.D.

Cal.1984) (religious discrimination); *Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467, 474 (D.C.Cal.1985), *aff'd in part, vacated in part on other grounds*, 827 F.2d 450 (9th Cir.), *as amended*, 836 F.2d 1156 (9th Cir.1987) (gender discrimination). Moreover, as noted above, in *Robinson* the same notion was applied by a California Court of Appeal to a racial discrimination in employment case, and last and most recently, in *Ficalora*, to a retaliatory discharge case.

■ Upon analysis, and despite the impressive chain of authority cited above, I do not believe such cases are dispositive of the matter at bar. However correct it may be that FEHA is the exclusive state remedy for an age discrimination claim, the same argument simply cannot be maintained as to employment discrimination predicated upon gender, or as to discharges of public employees in retaliation for their complaining about the conditions of employment.

I begin by observing that when read in its context, the broad application of the *Gay Law Students'* language, applying it to all groups protected by FEHA, is unjustified. The language relied upon in *Strauss* and its progeny was expressed in the context of the employment rights of homosexuals. The Court explained that the California statute did not incorporate a preexisting common law right to be free from employment discrimination based on sexual preference, because no preexisting right

---

not depend on age." *Cancellier*, 672 F.2d at 1318 n. 6.

16. The *Mahoney* decision also relies upon the asserted comprehensive character of FEHA as "a strong indication that the legislature intended the remedy to be exclusive." 571 F.Supp. at 293. While such a mode of interpretation is wholly appropriate to federal statutes, Judge Aguilar cites to no California cases suggesting that such an analysis is appropriate in considering whether a California statute's remedy is cumulative to a preexisting common law cause of action. The two cases cited by him do not address the issue at all. *Gold v. Los Angeles Democratic League*, 49 Cal.App.3d 365, 372, 122 Cal.Rptr. 732 (1975), deals solely with the contrast between the *Hentzel* and *Strauss* rules, while the dicta cited in *Hentzel v. Singer Co.*, 138 Cal.App.3d at 303 n. 9, 188 Cal.Rptr. 159, suggests that the comprehensiveness of FEHA

might require exhaustion of the administrative remedy provided by that statute. The latter dicta has recently been rejected by a California Court of Appeals holding that if a statute is cumulative, its administrative procedure need not be exhausted prior to suit on the preexistent common law remedy. *McKee v. Bell–Carter Olive Co.*, 186 Cal.App.3d 1230, 1246, 231 Cal.Rptr. 304 (1986). Indeed, previous to *Strauss*, it appears that California treated the question of the inferences to be drawn from the comprehensive character of the new legislation in terms of whether the creation of special judicial procedures displace preexistent common law procedures. *See Drury v. Superior Court*, 18 Cal. App.2d 340, 344, 63 P.2d 1184 (1936) (unlawful detainer); *Wright v. Superior Court*, 139 Cal. 469, 473, 73 P. 145 (depositions); *but see also McKee*, 186 Cal.App.3d at 1244–45, 231 Cal.Rptr. 304.

existed. Accordingly, the statute's prohibition of discrimination based on "sex" "did not contemplate discrimination against homosexuals." *Id.*, 24 Cal.3d at 490, 156 Cal.Rptr. 14, 595 P.2d 592. To recognize, as the Supreme Court did, that the legislature was adding previously unprotected categories of persons to the statute's ambit, hardly resolves the question of whether such protection existed as to other groups prior to the adoption of the statute. Indeed, as the Supreme Court of California has explained, a right to maintain a common law action for race discrimination survived adoption of FEHA's predecessor statute. "*Alcorn v. Ambro Engineering, Inc.*, 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216 (1970)] recognized a right independent of the FEPA to seek emotional distress and punitive damages when overt racial malice is the motive for discharge." *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 220, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). Assuming that prior to FEHA, California did not protect age discrimination in employment, reliance upon *Gay Law Students* to determine an age discrimination case may be justified. Reliance on homosexual and age cases, however, to extend the result to sex discrimination, or retaliatory discharge, without examination of the common law prior to FEHA appears wholly unjustified. It may be that prior to FEHA protection against discrimination in employment based upon age did not exist. Whether that argument is correct or not simply is irrelevant to discrimination on other bases. An examination of the preexistent common law demonstrates that prior to the enactment of FEHA, California's public policy prohibited both employment discrimination based on sex and adverse job actions against public employees prem-

ised on their objecting to the conditions of their employment.

As noted above, California's Constitution protects against gender-based employment discrimination, art. I, § 8, and has done so long prior to the enactment of FEHA. Indeed, the California constitutional provision was relied upon to strike down a gender discriminatory local ordinance in 1881. *See Matter of Maguire*, 57 Cal. 604 (1881). An analysis of the retaliatory discharge claim leads to the same conclusion. The right of a public employee to complain in a proper manner about the conditions of employment, *Belshaw v. Berkeley*, 246 Cal.App.2d 493, 54 Cal.Rptr. 727 (1966); *Bagley v. Washington Hospital District*, 65 Cal.2d 499, 55 Cal.Rptr. 401, 421 P.2d 409 (1966); *Adcock v. Board of Education*, 10 Cal.3d 60, 109 Cal.Rptr. 676, 513 P.2d 900 (1973), was well-fixed as a matter of California law long before FEHA made it unlawful to discharge an employee in retaliation for complaining about sex discrimination. Neither *Maguire, Sail'er Inn, supra*, or the public employee protection cases were considered by the court in *Gay Law Students* and it is inconceivable that the court was overruling them *sub silentio.*

Neither *Robinson, Hudson*, nor *Ficalora* examines the preexisting California cases despite their reliance on *Strauss*, which requires such an examination in order to resolve the question of whether a statutory remedy is exclusive or cumulative.[17] It thus appears relatively clear to me that however correct *Strauss* may be relative to age discrimination, it is inapplicable to questions of sex discrimination or public employee retaliatory discharge, and the governing California law in regard to those issues is not found in *Strauss*, but in *Hentzel.* Under the *Hentzel* analysis then,

---

17. Indeed, the *Ficalora* court proceeds from the express premise that the state's public policy against retaliatory discharge for protesting gender discrimination was "expressed" in FEHA, *id.*, 193 Cal.App.3d at 492, 238 Cal.Rptr. 360, and the concomitant implicit premise that the policy did not predate FEHA. The court distinguished *Tameny* as applying to situations "where an employee takes action encouraged by public policy for which the employee is fired, and the firing itself is not prohibited by any particular statute." *Id.*, at 492, 238 Cal.Rptr. 360. For the reasons stated in this opinion, I must respectfully disagree with the premise that FEHA created the public policy against retaliatory discharge. Furthermore, the *Ficalora* court's reasoning in distinguishing *Tameny* leads inexorably to the conclusion that a statute which creates a specific remedy will always displace a pre-existing common law remedy. Such is clearly not the law of California.

FEHA's remedy must be regarded as cumulative to the common law remedy rather than as displacing it.

For all of the above reasons, I conclude that California law prohibited gender-based employment discrimination and protected public employees who properly complained of the conditions of their employment. Since both rights preexisted the passage of FEHA, the adoption of that statute provided a cumulative remedy and did not displace a plaintiff's right to sue under California's doctrine of wrongful discharge.

Accordingly, defendants' motion to dismiss plaintiff's causes of action predicated upon wrongful discharge based upon the assertion that FEHA is the exclusive remedy for the conduct complaint of is DENIED.

IT IS SO ORDERED.