In re S.N.A. NUT COMPANY, Debtor.

S.N.A. NUT COMPANY, Plaintiff,

v.

TULARE NUT COMPANY, Defendant.

Bankruptcy No. 94 B 05993.
Adv. No. 95 A 01295.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 21, 1996.

---

A175.

Catherine Steege, Jenner & Block, Chicago, IL, for Plaintiff.

Nabil E. Zumout, Lang, Richert & Patch, Fresno, CA, for Defendant.

ERWIN I. KATZ, Bankruptcy Judge.

## MEMORANDUM OPINION

This matter comes before the Court on the Motion of Tulare Nut Company ("Tulare") for Summary Judgment, or in the alternative, for Partial Summary Judgment, on both counts of the Adversary Complaint ("Complaint") filed by S.N.A. Nut Company ("Debtor"), and the Debtor's Cross–Motion for Summary Judgment. For the reasons set forth herein, Tulare's Motion for Summary Judgment is granted with respect to Count I and denied with respect to Count II of the Complaint. Debtor's Cross–Motion

for Summary Judgment is denied as to both Count I and Count II of the Complaint.

The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334, and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (K) & O & (O).

## I. STATEMENT OF UNDISPUTED FACTS [1]

1. Debtor is an Illinois corporation, headquartered in Elk Grove Village, Illinois, with its principal place of business in Chicago. Debtor was engaged in the business of buying, shelling, processing, and selling pecans and other nut products to industrial food producers. Although Debtor primarily bought, shelled, processed, and sold pecans, it also processed and sold other nuts such as walnuts.

2. Tulare owns a walnut processing plant, and is a registered walnut processor in the state of California. Tulare processes nuts purchased from other growers. It is disputed whether Tulare processes nuts grown and produced by itself from self-owned orchards and orchards owned by others.

3. The process of "operating" orchards involves complete care of the orchards, including irrigation, pruning, discing, daily caring, harvesting, drying, and marketing. The "processing" of walnuts entails, among other things, hulling, drying, and bleaching or shelling.

4. Tulare processes other growers' walnuts (including walnuts produced from orchards operated by Tulare) before walnuts produced from its own orchards, and sells walnuts on a "first processed-first sold" basis.

5. Tulare's inventory of walnuts consists of processed and unprocessed walnuts.

6. It is disputed whether Tulare's stock of "combination" walnut halves and pieces totaled approximately 296,721.95 pounds in the 1993–94 crop year. It is also disputed whether 142,552.70 pounds of the stock were

produced from orchards owned and operated by Tulare.

7. On or about February 10, 1994, Tulare sold and delivered to Debtor 44,000 pounds of "combination" walnut halves and pieces on credit for $85,800 ($1.95/pound) to be paid "net 30 days" (within 30 days).

8. After its sale to Debtor, Tulare sold approximately 171,275 pounds of "combination" halves and pieces to other purchasers during the 1993–94 season.

9. Although it is disputed whether Tulare grew and produced the walnuts sold to Debtor, it is undisputed that Tulare processed the walnuts.

10. Tulare did not grant Debtor a written release or waiver of any lien rights.

11. On March 2, 1994, five petitioning creditors filed an involuntary petition in the Western District of Texas, El Paso Division, pursuant to 11 U.S.C. § 303(b), seeking an Order for Relief against Debtor under Chapter 11 of the Bankruptcy Code ("Code").

12. On March 24, 1994, Debtor consented to the entry of an Order for Relief and the Court transferred venue to the Northern District of Illinois, Eastern Division.

13. On or about February 10, 1994, due to the purchase of walnuts from Tulare, at least 44,000 pounds of processed walnuts were in Debtor's possession. On the petition date, the total amount of processed walnuts in Debtor's possession exceeded 484,000 pounds.

14. On January 19, 1995, the Court entered an order confirming the Fourth Amended Joint Plan of Reorganization dated December 6, 1994 ("Plan").

15. The Plan defines "California Statutory Lien Creditors" as California growers asserting liens under the California Food & Agricultural Code §§ 55631–55653.

16. Pursuant to § 1.15 of the Plan, Class XIV consists of all claims of the California Statutory Lien Creditors.

17. Pursuant to Article III of the Plan, Class XIV is an "unimpaired class" under § 1124 of the Code.

---

1. Except as otherwise noted.

18. Section 3.5 of the Plan provides, "[w]ithin 60 days after the confirmation date, each creditor who contends that it is entitled to full payment of its allowed claim by reason of statutory liens arising under California law, must file with the bankruptcy court and the Debtor a document setting forth the basis for such contention and attaching all documentary support.... All objections filed to Class XIV claims must be filed within 120 days after the Confirmation Date."

19. Section 13.6 of the Plan provides, "[a]ll other avoidance actions except those expressly released herein are preserved for the benefit of the estate."

20. On January 30, 1995, Tulare filed its proof of claim asserting a secured claim. A copy of this proof of claim was sent to Debtor's counsel on February 6, 1995.

21. On March 21, 1995, Tulare amended its proof of claim to assert its legal identity as "Tulare Nut" and its status as a Class XIV claimant.

22. On May 19, 1995, Debtor filed an omnibus Objection to California Grower Claims on the grounds that, (1) the alleged lien claims were previously released; (2) no collateral exists upon which the liens may attach; (3) the liens are avoidable under § 545(2) of the Code.

23. On October 31, 1995, Debtor filed its Adversary Complaint objecting to Tulare's secured creditor status and classification as a Class XIV creditor under the Plan. Count I of the Complaint is an action to avoid Tulare's producer's lien under § 545(2) of the Code, on the grounds that the lien was not perfected and enforceable against a hypothetical bona-fide purchaser of walnuts at the time of the commencement of the case. Count II of the Complaint is an objection to Tulare's claim on the grounds that, (1) Tulare is not a producer of farm products entitled to assert a lien under the California statute; (2) Tulare must trace its alleged lien, which is not enforceable against other inventory of the Debtor; (3) Tulare is estopped from asserting its lien; (4) Tulare's claim is disallowable under § 502(d) of the Code since it is subject to avoidance under § 545(2).

24. Tulare filed a Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment, on both counts of the Complaint, and Debtor filed a Cross–Motion for Summary Judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

 Under Federal Rule of Civil Procedure 56(c) (adopted by Federal Rule of Bankruptcy Procedure 7056), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990). Summary judgment is granted to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Division*, 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that there is no such factual dispute. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56.

 The party opposing the motion may not rest upon pleadings, allegations or denials. The response of that party must set forth in required filings specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 567 (7th Cir.1989); *Patrick v. Jasper County*, 901 F.2d 561, 564–66 (7th Cir.1990).

 On summary judgment motions, inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56;

*Billups v. Methodist Hospital of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991); *Karazanos v. Navistar International Transportation Corp.,* 948 F.2d 332, 335 (7th Cir.1991). However, a material factual dispute is sufficient to block judgment only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987).

■ The court should not "weigh the evidence." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *Illinois Bell Telephone Co. v. Haines and Company, Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249, 250, 106 S.Ct. at 2510, 2511; *Trautvetter,* 916 F.2d at 1147. When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### A. Cross–Motions for Summary Judgment

■ Although both parties argue for summary judgment, that does not by itself indicate that there are genuine issues of material fact. The court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. *ITT Indust. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987). *See* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure,* § 2720 (2d ed. 1983 & Supp.1987). Cross-motions for summary judgment do not require the court to decide the case on those motions. The court can deny both motions if both parties fail to meet the burden of establishing that no genuine issue of material fact exists and that they are entitled to a judgment as a matter of law. *ITT Indust. Credit Co.,* 674 F.Supp. at 1331. *See* Wright, Miller & Kane, *Federal Practice and Procedure,* § 2720.

### B. Partial Summary Judgment

■ Federal Rule of Civil Procedure 56(d) involves situations in which the motion does not lead to a judgment on the entire case but only terminates further contest on a portion of the litigation. Because Rule 56(d) is part of the rule entitled "Summary Judgment," the order prescribed by this Rule has been referred to as "partial summary judgment." *See* Wright, Miller & Kane, *Federal Practice and Procedure,* § 2737. However, partial summary judgment is not possible under federal pleading unless it disposes entirely of one or more counts of the complaint or counterclaim. *Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216 (7th Cir.1946); *Capitol Records, Inc. v. Progress Record Distributing,* 106 F.R.D. 25, 28 (N.D.Ill.1985).

### III. TULARE'S MOTION FOR SUMMARY JUDGMENT

Tulare's Motion for Summary Judgment attacks both counts of Debtor's Complaint, alleging affirmative defenses as well as the validity of its producer's lien. Since the Court finds that Tulare's producer's lien, to the extent that it exists, cannot be avoided by Debtor under § 545(2) of the Code, summary judgement will be granted with respect to Count I of the Complaint. However, since a genuine issue of material fact exists with respect to the amount of nuts, if any, for which Tulare has a producer's lien, the Court will deny summary judgement as to Count II of the Complaint.

#### A. Count I

##### 1. Res judicata defense

Tulare argues that summary judgment is warranted with respect to Count I of the Complaint since it is barred by the doctrine of res judicata. To the extent that the Plan classified claims of the California Statutory Lien Creditors as unimpaired, it was required to leave unaltered the legal, equitable, and contractual rights of such claims. Upon confirmation, the Plan acted as a binding contract, forever barring the Debtor from bringing avoidance actions which necessarily seek to "alter" the rights of the claimants. Consequently, Tulare asserts, Debtor is

barred from attempting avoidance of its claim under § 545(2) of the Code.

The Plan, however, specifically reserves the right to object to claims of the California Statutory Lien Creditors, and generally preserves the right to commence avoidance actions.[2] Thus, Tulare's res judicata defense is deficient as a matter of law.

*2. Avoidance under § 545(2) of the Code*

Tulare also argues that since its producer's lien is enforceable against a hypothetical bona-fide purchaser, and not avoidable under § 545(2) of the Code, summary judgment must be granted with respect to Count I of the Complaint.

Under § 55631 of the California Producer's Lien Statute,

[e]very producer of any farm product that sells any product which is grown by him to any processor under contract, express or implied, in addition to all other rights and remedies which are provided for by law, has a lien upon such product and upon all processed or manufactured forms of such farm product for his labor, care, and expense in growing and harvesting such product.

Cal.Food & Agric.Code § 55631 (West 1986 & Supp.1996).

The producer's lien is subject to no formal perfection requirements such as recording or filing. It attaches to every purchased product and processed form of such product in the possession of the processor, regardless of segregation. Cal.Food & Agric.Code § 55634. The lien is extinguished upon relinquishment of possession by the processor. Cal.Food & Agric.Code § 55634.

Under § 545(2) of the Code, the Trustee may avoid any statutory lien which,

[i]s not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 545(2).

*In re Loretto Winery Ltd.*, 898 F.2d 715 (9th Cir.1990), is the only reported case dealing with avoidance of a lien established under the California Producer's Lien Statute. The factual scenario which confronted the Ninth Circuit in *Loretto Winery* is similar to that present in the matter at bar. Valley Farms, a producer, sold partially processed grapes to Loretto Winery, a processor. The sale gave Valley Farms a producer's lien on all the grapes and wine in the possession of Loretto Winery to secure the purchase price of the grapes. Eight days after the sale Loretto Winery filed for bankruptcy under Chapter 11, and the case was subsequently converted to a Chapter 7 proceeding. The trustee filed a complaint to avoid Valley Farm's producer's lien under § 545(2) of the Code. The court determined that the producer's lien was enforceable against a hypothetical bona-fide purchaser of the grapes, and not subject to avoidance. The court reasoned that in light of Loretto Winery's possession of the grapes on the petition date, it was not appropriate to assume that a hypothetical bona-fide purchaser had possession of the grapes in its § 545(2) analysis. Therefore, since the producer's lien extended to all grapes and wine in the debtor's possession, the lien remained intact. However, since the hypothetical bona-fide purchaser was deemed to be without possession of the grapes, it was left without an enforceable contract. Given the California statute's prohibition on transferral of products subject to producer's liens by the processor without payment of the proceeds to the producer, enforcement of the hypothetical contract would subject the debtor to civil and criminal penalties. Consequently, the court held that the contract must be deemed void and unenforceable.

The characteristics of a bona-fide purchaser are determined according to state law. *See id.* at 718 n. 4 (noting that "defin[ing] the bona fide purchaser's attributes according to federal law ... [is] inconsistent with the rule that enforcement against a bona fide purchaser is determined under state law"). The parties cite to a number of cases considering whether a hypothetical bona-fide purchaser under § 545(2) of the Code is deemed to have possession of goods subject to a statutory lien. In each of these cases the issue was

---

**2.** *See Statement of Undisputed Facts supra* p. 4, ¶ 18 & 19, for these Plan provisions.

resolved by analyzing each state law which controlled validity of the lien.

In essence, the Ninth Circuit in *Loretto Winery* held that a purchaser without possession cannot qualify as a bona fide purchaser. Such an interpretation denies the existence of the hypothetical bona-fide purchaser referenced by § 545(2). Nevertheless, this Court defers to the Ninth Circuit's interpretation of the state law in its circuit.

■ Debtor argues that, absent provisions for constructive or actual notice in the California statute, Tulare's producer's lien constitutes a "hidden lien," which must fall to a bona-fide purchaser given California's general policy against liens which fail to give notice to subsequent purchasers. Whether a lien is enforceable against a bona-fide purchaser is determined under state law. *In re Phillips Construction Co.*, 579 F.2d 431, 432 (7th Cir.1978).

■ While it is true that California has a general distaste for "hidden liens," *see Schut v. Doyle*, 168 Cal.App.2d 698, 702, 336 P.2d 567, 569 (1959), it equally disfavors attempts to displace the interests of material suppliers in goods that increase the value of debtor estates. *See Industrial Asphalt, Inc. v. Garrett Corp.*, 180 Cal.App.3d 1001, 1006, 226 Cal.Rptr. 17, 19 (1986). Moreover, the California legislature has evidenced its specific intent to protect beneficiaries of producer's liens by ensuring the lien's vitality.[3]

■ Consequently, Tulare's alleged producer's lien cannot be avoided since there could not be a hypothetical bona-fide purchaser as to the producer's walnuts at the commencement of the case. Tulare's Motion for Summary Judgment will be granted with respect to Count I of the Complaint.

**B. Count II**

*1. Timeliness of Count II under § 3.5 of the Plan*

■ Tulare argues that summary judgement is appropriate with respect to Count II of the Complaint on the grounds that it is untimely under § 3.5 of the Plan. Section 3.5 states, "[a]ll objections filed to Class XIV claims must be filed within 120 days after the Confirmation Date." Plan of Reorganization § 3.5. Although the Plan was confirmed on January 19, 1995, the Complaint was not filed until October 31, 1995.

Tulare's argument omits one crucial fact. On May 19, 1995, Debtor filed its omnibus Objection to California Grower Claims, which attacked the validity of Tulare's lien within the time prescribed by § 3.5 of the Plan. Federal Rule of Bankruptcy Procedure 3007 provides that, "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Fed.R.Bankr.P. 3007. Federal Rule of Bankruptcy Procedure 7001 requires actions "to determine the validity priority or extent of a lien" to be commenced as adversary proceedings. Fed.R.Bankr.P. 7001. Consequently, Debtor filed its Complaint on October 31, 1995. Count II of the Complaint is identical to the Objection with the exception that it alleges two additional theories of support, *viz*, that Tulare is not a producer of farm products entitled to assert a lien under the California statute, and that Tulare is estopped from asserting its lien.

Federal Rule of Civil Procedure 15(c) provides, in pertinent part, that "whenever the claim or defense asserted in the amended pleading arose out of the conduct, transac-

3. The lien is easily established. It arises upon delivery of the product and is without formal perfection requirements. Cal.Food & Agric.Code § 55632. The breadth of the lien extends beyond the specific products delivered, including all raw and processed forms of the product in the processor's possession, regardless of segregation. Cal.Food & Agric.Code § 55634. The lien is not easily relinquished. Although it extends only to those products in the processor's possession, the processor is forbidden from transferring possession when the proceeds are not utilized to satisfy the producer's lien, Cal.Food & Agric.Code § 55640, under the pains of civil and criminal penalty, Cal.Food & Agric.Code § 55922, 55901, 55905 & 55906. These provisions are to be construed liberally so as to protect the Agricultural Code's purpose of "promoting and protecting the agricultural industry." Cal.Food & Agric.Code § 3; *see In re T.H. Richards Processing Co.*, 910 F.2d 639, 643 n. 3 (9th Cir.1990); *In re Loretto Winery Ltd.*, 898 F.2d 715, 720–21 (9th Cir.1990); *McKee v. Bell–Carter Olive Co.*, 186 Cal.App.3d 1230, 1237, 231 Cal.Rptr. 304, 308 (1986).

tion, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c). Federal Rule of Bankruptcy Procedure 7015 provides that "Rule 15(c) F.R.Civ.P. applies in adversary proceedings." Fed.R.Bankr.P. 7015.

Courts have allowed adversary complaints objecting to dischargeability to "relate back" to the improper filing of an "Objection to Discharge," when the objection was filed within the bar date and the allegations in the submissions were identical. *See In re Levine*, 132 B.R. 464, 467 (Bankr.M.D.Fla. 1991). Complaint amendments have also been allowed to "relate back" to the complaint filing when they assert alternative grounds for recovery omitted from the original pleadings. *See Kuba v. Ristow Trucking Co., Inc.*, 811 F.2d 1053, 1055 (7th Cir.1987). However, "relation back" of amendments is not allowed to further abusive purposes "such as undue delay, bad faith or dilatory motive on part of the movant." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In the case at bar, although Count II of the Complaint is not completely identical to the previously filed Objection, the additional theories alleged all arise from the same transaction upon which Tulare's claim arose. Also, Debtor's tardy filing of the Complaint appears to have resulted from its honest belief that the Plan provided for claim objections without the necessity of filing adversary complaints, rather than bad faith or dilatory motive. Consequently, mindful that in general amendments under Rule 15(c) should be freely allowed, *Staren v. American National Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1264 (7th Cir.1976), the Court will deem Count II of the Complaint to "relate back" to the filing of the claim objection, so as to be considered timely under the Plan.

### 2. Validity of lien under California Producer's Lien Statute

Tulare also argues that summary judgment is warranted with respect to Count II of the Complaint.

■ Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R.Bankr.P. 3001(f). Claim objectors carry the initial burden to produce some evidence to overcome this rebuttable presumption. *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992). However, the ultimate burden of persuasion always lies on the claimant to prove its entitlement to the claim. *In re Octagon Roofing*, 156 B.R. 214, 218 (Bankr.N.D.Ill.1993).

■ The California statute states, in pertinent part, "every producer of any farm product that sells any product which is grown by him to any processor under contract ... has a lien upon such product and upon all processed or manufactured forms of such farm product." Cal.Food & Agric.Code § 55631. In order to be entitled to a lien under the statute, Tulare must have sold walnuts "grown by him" to Debtor.

Although Debtor admits that the walnuts it purchased were processed by Tulare, it disputes that they were grown by Tulare. In its Statement of Undisputed Facts, Tulare states that it processed 296,721.95 pounds of "combination" walnut halves and pieces, the same kind sold to Debtor, during the 1993–94 crop year. Of that amount, 142,552.70 pounds are alleged to have been produced from orchards owned and operated by Tulare. It is undisputed that Tulare sold 44,000 pounds of "combination" walnuts to Debtor on or about February 10, 1994, and 174,000 pounds of the same "combination" walnut halves and pieces thereafter. Since Tulare claims it processes other growers' walnuts before it processes those produced from its own orchard, and sells processed walnuts on a "first processed-first sold" basis, Debtor argues that Tulare must have sold it walnuts grown by other producers.

Tulare responds that Debtor's reasoning is flawed. Although it sells walnuts on a "first processed-first sold" basis, and processes walnuts grown by others before those grown by itself, Tulare appears to argue that its processing of walnuts takes place on a rolling basis. Therefore, rather than reserving all of its self-grown walnuts for processing at

the end of the season, of those raw walnuts in Tulare's inventory at a given point in time, the home-grown stock are merely sent to the end of the processing queue.

The issue of whether, and in what amount, self-grown walnuts were sold to Debtor is sufficiently in dispute that "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Consequently, a genuine issue of material fact exists as to whether, and to what extent, Tulare is entitled to a producer's lien under the California statute. Summary judgment with respect to Count II of the Complaint will be denied.

## IV. DEBTOR'S CROSS–MOTION FOR SUMMARY JUDGEMENT

Debtor's Cross–Motion for Summary Judgment argues that Tulare is not entitled to a lien under the California statute, and that any lien to which it is entitled was either waived, or is avoidable under § 545(2) of the Code. Since the Court finds that Tulare's alleged lien is not avoidable by the Trustee under § 545(2) of the Code, Debtor's Cross–Motion for Summary Judgment with respect to Count I will be denied. Since the Court finds that a genuine issue of material fact exists as to whether Tulare is entitled to a producer's lien, and that Debtor's waiver defense is insufficient as a matter of law, Debtor's Cross–Motion for Summary Judgment with respect to Count II will also be denied.

### A. Count I

Debtor's Cross–Motion for Summary Judgment argues that any producer's lien possessed by Tulare is avoidable under § 545(2) of the Code. Since Debtor does not state to which count of the Complaint this argument is addressed, the Court will consider it when evaluating whether summary judgment is appropriate with respect to both counts. For the reasons stated in Part III–A–2 of the Opinion, the Court finds that any producer's lien held by Tulare is not avoidable under § 545(2) of the Code. Thus, Debtor's Cross–Motion for Summary Judgement will be denied with respect to Count I of the Complaint.

### B. Count II

Debtor argues for summary judgment with respect to Count II of the Complaint on the grounds that, based on undisputed facts, Tulare is not entitled to a lien under the California Producer's Lien Statute, and alternatively, that Tulare waived any lien interest it may have possessed.

#### 1. Entitlement to lien under California Producer's Lien Statute

Debtor argues that since Tulare processes walnuts, it cannot be considered a "producer" of walnuts so as to qualify for a producer's lien under the California statute. Section 55408 of the California Food & Agricultural Code defines a "producer" as "any person that is engaged in the business of growing or producing any farm product." Cal.Food & Agric.Code § 55408, whether or not that producer also processes farm product. The Court does not read § 55408 to prohibit possession of producer's liens by those who process, as well as grow and produce, farm products. Such an interpretation would run contrary to the California legislature's intent that the Producer's Lien Statute be liberally construed to promote and protect the agricultural industry. *See* Cal.Food & Agric.Code § 3; *In re T.H. Richards Processing Co.,* 910 F.2d 639, 643 n. 3 (9th Cir.1990); *In re Loretto Winery Ltd.,* 898 F.2d 715, 720–21 (9th Cir.1990); *McKee v. Bell–Carter Olive Co.,* 186 Cal.App.3d 1230, 1237, 231 Cal.Rptr. 304, 308 (1986). It is undisputed that Tulare is a registered walnut processor in the state of California. However, it is disputed whether Tulare grows and produces walnuts from orchards which it owns. In considering Debtor's Cross–Motion for Summary Judgement, we must draw all factual inferences in favor of Tulare. In doing so, and considering Tulare as both a producer and processor, the Court concludes that Tulare is not precluded from qualifying as a "producer" under the California statute.

Debtor argues that since it purchased "processed" walnuts from Tulare, and not walnuts in their raw form, Tulare is not entitled to a producer's lien under the California statute, which only protects the sale of "farm products." Section 55631 states, in pertinent part, "every producer of any farm

product that sells any product which is grown by him to any processor ... has a lien upon such product and upon all processed or manufactured forms of such product." Cal. Food & Agric.Code § 55631. A plain reading of § 55631 proves Debtor's argument to be misplaced. "Farm product" is used to modify the term "producer." Although a "producer" must produce a "farm product" to qualify under the statute, it need only sell "any product which is grown by him" for a given sale to be protected by a producer's lien. Such an interpretation is supported by *In re Loretto Winery*, 898 F.2d 715 (9th Cir.1990), where the court held that a grape producer maintained a lien on grapes and wine sold to a processor, notwithstanding the fact that they were partially processed. Thus, regardless of whether Debtor purchased raw or processed walnuts, the goods qualify as "any product," and Tulare is not prevented from holding a producer's lien on these grounds.

Debtor argues that since the walnuts it purchased were not grown by Tulare, Tulare is not entitled to a producer's lien under the California statute. For the reasons previously stated, the Court finds that a genuine issue of material fact exists as to whether the walnuts purchased by Debtor were grown by Tulare.

Debtor argues that since it no longer has possession of the walnuts purchased on or about February 10, 1994, Tulare is not entitled to a producer's lien. The California statute states, "[e]very lien which is provided for in this article is on every farm product and any processed form of the farm product which is in the possession of the processor without segregation of such product." Cal. Food & Agric.Code § 55634. To the extent Debtor alleges that Tulare must trace its lien to the specific walnuts sold it is mistaken. The statute specifically states that the lien applies to all comingled products without regard to segregation. To the extent Debtor alleges that it was without possession of wal-

nuts encumbered by Tulare's lien on the petition date, its contention is refuted by the uncontested facts.[4]

Consequently, since Debtor's argument that Tulare is not entitled to a producer's lien under the California statute is deficient as a matter of law, and subject to a genuine issue of material fact, summary judgment will be denied as to Count II of the Complaint on these grounds.

### 2. Waiver of Producer's Lien

 Regardless of whether Tulare is entitled to a producer's lien under the California statute, Debtor argues that summary judgment is nevertheless warranted due to Tulare's waiver of any lien it may have possessed.

Debtor does not allege a specific clear waiver, but rather asserts that since Tulare agreed to a payment arrangement for the walnuts other than cash on delivery, it waived its alleged producer's lien. The California statute contains two release provisions—§ 55637 and § 55639. Section 55637 states, in pertinent part, "[a]ny lien on any product or processed product may ... be released ... upon arrangements being made for such payment which are satisfactory to the producer." Cal. Food & Agric.Code § 55637. It is undisputed that Debtor purchased the walnuts on credit with payment due "net 30 days" (within 30 days).

In *In re T.H. Richards Processing Co.*, 910 F.2d 639 (9th Cir.1990), the Ninth Circuit confronted the issue of whether sellers/growers of produce released their producer's liens as a matter of law by agreeing to a deferred payment plan under § 55637 of the California Producer's Lien Statute. The sales contract provided that the processor would pay 50% of the price within one week of delivery of the produce, and 50% one year after delivery, without interest. In light of the word "may" in § 55637, the Ninth Circuit interpreted the section to allow permissive release of producer's liens by producers, rather than mandato-

---

4. It is undisputed that Tulare shipped 44,000 pounds of processed walnuts to Debtor on or about February 10, 1994. Section 55634 of the California Producer's Lien Statute establishes that a producer's lien extends to all products and processed forms of such product upon delivery.

Cal.Food & Agric.Code 55634 & 55632. It is undisputed that on the petition date, Debtor possessed 484,000 pounds of processed walnuts. Thus, Debtor did have possession of the walnuts subject to Tulare's lien at the time the bankruptcy petition was filed.

ry release, upon "arrangement being made for ... payments which are satisfactory to the producer." *Id.* at 643–47. Such an interpretation, the court reasoned, would comport with the California statute's legislative history, prevent rendering the release procedures of § 55639 superfluous, and further the statute's purpose by preventing limitation on the applicability of the producer's lien. *Id.* at 644–47.

The holding of *T.H. Richards Processing* is equally applicable to deferred payment plans which contemplate one month, as it is to those which contemplate one year. Consequently, mere agreement by Tulare to a satisfactory payment arrangement does not necessarily imply waiver of the producer's lien.

It is undisputed that Tulare did not grant a written release or waiver to Debtor of any lien rights. However, Debtor asserts that Tulare waived its alleged producer's lien by failing to prevent commingling, consumption, or sale of the walnuts by Debtor, by failing to request adequate protection for its interest, and by failing to prevent removal of the walnuts from California by Debtor.

 Section 55639 of the California statute provides five procedures by which producers are held to have released their producer's liens:

(a) By paying the agreed or actual value of any farm product which is purchased by such processor within 20 days from the date of delivery of the product unless the date of payment is otherwise agreed upon in writing or such payment is secured other than by lien.

(b) By depositing with the director a surety bond which is executed by such processor as principal and by a surety company which is qualified and authorized to do business in the state as surety in the amount which equals the current market value of the product or processed product which is intended by such processor to be sold or otherwise disposed of, as such value may appear by the sworn statement of such processor in accordance with quotations from the federal-state market news service or other evidence which is satisfactory to the director. The bonds shall be conditioned that if the processor fails to pay up to the amount of such bond, the lawful claims of all producers whose liens have been released by the bond, within 35 days after date of the bond, the surety shall be liable to and shall pay to the state on behalf of such claimants all such lawful claims as may be covered by the amount of the bond together with costs of suit, if any action is filed on the bond.

(c) By depositing with the director a cash sum in lawful money of the United States which is expressly set apart by an instrument in writing that is signed by the processor for the purpose of guaranteeing to the extent of such sum, payment of all existing claims of producers whose liens are released by the deposit, within 35 days from the date of such deposit. The director shall be named in such instrument as trustee to carry out the purpose and intent of the instrument.

(d) By designating, setting apart, and depositing in a public warehouse a quantity of any processed farm products and indorsing over to the director and delivering to him the warehouse receipt for such products for the purpose of guaranteeing to the extent of the value of such deposit, payment within 35 days from the date of such deposit, all existing claims of producers and labor claimants whose liens are released by it.

(e) By securing a release from the director after payment in full for such farm product.

Cal.Food & Agric.Code § 55639.

"These five procedures are the only means by which a processor can effect a release of a producer's lien by operation of law." *In re GVF Cannery, Inc.*, 188 B.R. 651, 657 (Bankr.N.D.Cal.1995); *In re T.H. Richards Processing Co.*, 910 F.2d 639 (9th Cir.1990) ("[i]t would be most unwise to graft onto the producer's lien statute another method of release that would render nugatory so many of the statute's express provisions"). Since Debtor does not contend that any of the § 55639 release procedures were employed here, Tulare will not be deemed to have

654

waived its alleged producer's lien by agreeing to a 30–day deferred payment arrangement.

Summary judgment will be denied with respect to Count II of the Complaint on these grounds.

## V. CONCLUSION

For the foregoing reasons, Tulare's Motion for Summary Judgment is granted as to Count I, and denied with respect to Count II of the Complaint, and Debtor's Cross–Motion for Summary Judgment is denied as to both Count I and Count II of the Complaint.