In re AMERICAN PREFERRED
PRESCRIPTION, INC.,
Debtor.

Tracar, S.A., Appellant,

v.

Kenneth P. Silverman, as Chapter 11 Trustee for American Preferred Prescription, Inc., et al., Appellees.

No. 99 CV 4232(DRH).

United States District Court,
E.D. New York.

March 20, 2000.

Parker Chapin Flattau & Klimpl, LLP (by Joel Lewittes), New York City, for Appellant.

Jaspan Schlesinger Silverman & Hoffman LLP (by Eugene P. Cimini, Jr.), Garden City, NY, for Appellees.

Meltzer, Lippe, Goldstein & Schlissel, P.C. (by Thomas J. McGowan), Mineola, NY, for Cost Controls, Inc.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court is the appeal of Tracar, S.A. ("Tracar") from a June 28, 1999 Order of the United States Bankruptcy Court for the Eastern District of New York (Eisenberg, B.J.) granting the motion of Kenneth Silverman (the "Trustee") to expunge Tracar's claims. For the reasons that follow, the appeal is granted and the June 28, 1999 Order is reversed. The matter is remanded to the Bankruptcy Court for such further action as the Bankruptcy Court deems appropriate consistent with this decision.

## BACKGROUND

The history of this case is long and tortured and is set out in great detail in Judge Eisenberg's Decision and Order dated August 25, 1999 (the "August 25, 1999 Order"), familiarity with which is assumed. Briefly, American Preferred Prescription, Inc. and its affiliates ("APP" or the "Debtor") were in the business of operating retail, delivery, and mail order pharmaceutical prescription businesses located in New York, Florida, and Georgia. (August 25, 1999 Order at 2–3.) On July 22, 1993, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code and, by Amended Order dated March 26, 1996, the Bankruptcy Court confirmed the Debtor's Third Amended Plan of Reorganization (the "Plan"). (*Id.* at 3.)

*Appointment of a Post–Confirmation Trustee*

One of the issues that has been raised by the parties on the instant appeal is whether the Bankruptcy Court had jurisdiction to appoint a post-confirmation trustee. Although for the reasons set forth below, the Court declines to rule upon this issue, a brief recitation of the facts surrounding the Trustee's appointment is necessary to put the present appeal in context.

Prior to plan confirmation, Cost Controls, Inc. ("CCI"), the largest creditor of the Debtor, initiated an adversary proceeding against the Debtor based upon fraudulent conveyance and alter ego theories. (*Id.* at 4.) After a nine-day trial, the Honorable Francis Conrad issued an Order on March 21, 1997 (the "March 21, 1997 Order") granting CCI compensatory damages in the amount of $3,043,781.03, and punitive damages in the amount of $9,131,343.09, against the Debtor. This decision has been appealed and the appeal stayed pending resolution of the instant appeal.

Shortly after Judge Conrad issued his opinion, CCI filed an Order to Show Cause before the Bankruptcy Court seeking the appointment of a Chapter 11 Trustee to safeguard the Debtor's assets so that the Plan could be fully consummated. (*Id.* at 5–6.) By Order dated April 11, 1997, just over one year after the Plan had been confirmed, the Bankruptcy Court "appointed Kenneth Silverman as trustee for the limited purpose of preserving and maintaining the Debtor's assets in light of Judge Conrad's findings of 'lying, stealing and cheating' on the part of the Debtor and its principals." (*Id.* at 6.) This Order was never appealed.

Thereafter, the Trustee filed his first report on the Debtor, which included a finding that the Debtor was paying large sums of money to its parent corporation for services that were, in fact, being performed by the Debtor. The report also noted that the Debtor's principals were extremely reluctant to cooperate with the Trustee. (*Id.* at 6–7.) At the request of the creditors, and after notice and a hearing, the Bankruptcy Court issued an Order on June 19, 1997 "expanding the powers and duties of the Trustee to include the authority to investigate and settle 'any and all claims asserted by and against the Debtor' and to settle such claims as advisable, based on the Trustee's business judgment, but only after notice, hearing and approval by th[e] [Bankruptcy] Court." (*Id.* at 7.) No appeal was taken of this Order.

By Order dated June 24, 1998, and after an extensive hearing lasting six months which produced evidence that the Debtor was secreting assets to avoid payment to creditors under the Plan, the Bankruptcy Court enlarged the Trustee's powers to that of a full operating trustee. (*Id.*) No appeal was taken from this Order. (*Id.*)

*The History of Tracar's Claims*

Tracar, the alleged assignee of Hadiya, S.A. ("Hadiya"), is defined in the Plan as the holder of secured and unsecured claims totaling $6,684,107.00. (*Id.*) Hadiya's claims were sold and assigned to Tracar on March 30, 1995. (Plan ¶ 1.34.)

Prior to Plan confirmation, CCI initiated an adversary proceeding against Hadiya raising objections to the latter's claims. (Am. Compl. dated July 24, 1995.) The proceeding sought, *inter alia*, to void as preferences certain transfers made by the Debtor to Hadiya prior to the filing of the Bankruptcy petition pursuant to 11 U.S.C. § 547. (*Id.*) The proceeding also sought to have Hadiya's claims "equitably disallowed and expunged, and/or subordinated to the claims of all other creditors of the Debtor." (*Id.* ¶ 94.) Because Hadiya failed to respond to the Amended Complaint in a timely fashion, the Bankruptcy Court entered a judgment by default against Hadiya on March 27, 1996. The default judgment voided the transfers between the Debtor and Hadiya as preferential and fraudulent. (Mar. 27, 1996 Judgment.) The default judgment also equitably subordinated the proof of claim filed by Hadiya against the Debtor in the amount of $6,684,107.00. (*Id.* at 3.)

On March 26, 1996, one day before the default judgment was entered, the Plan was confirmed. Consistent with the treatment of Hadiya's claims in the default judgment, the Plan provides for the subordination of Hadiya's claims, in the amount of approximately $6,684,107.00, to the claims of non-affiliated creditors such that the latter group is to receive one hundred percent of their claims before Hadiya receives any payment. (Aug. 25, 1999 Order at 3; Plan at 9–11.) The Plan also provides the Debtor with the right to object to "any claim filed with the Bankruptcy Court" so long as such objection is made within 45 days of the confirmation date or within such time as may be fixed by the Bankruptcy Court. (Plan arts 3.1 and 8.1.)

*The Motion to Expunge Tracar's Claims*

Over two years after plan confirmation, the Trustee moved the Bankruptcy Court for an order, pursuant to the Plan, to extend its time to file objections to claims. By Order dated October 30, 1998, the Bankruptcy Court granted the Trustee's motion, finding that "[t]he Plan clearly contemplates that the Debtor shall have the authority to commence motions objecting to claims prior to confirmation and thereafter," (Oct. 30, 1998 Order at 4), and that the Plan provides the Bankruptcy Court with post-confirmation jurisdiction to hear such objections "at any time prior to forty five (45) days after the Confirmation Date, *or within such other time period as may be fixed by the Court.*" (*Id.* at 3 (emphasis in original).)

Thereafter, by motion dated December 3, 1998, the Trustee moved for an order expunging Tracar's claims. After holding several hearings, the Bankruptcy Court granted this motion by Order dated June 28, 1999 (the "June 28, 1999 Order"), finding that these claims were "completely false and unsupported, and the documents purporting to evidence the loans and assignments in question were wholly fabricated by an officer of the Debtor, at the direction of [its principals]." (August 25, 1999 Order at 11.) It is this Order which is the subject of the instant appeal.

*The Instant Appeal*

Tracar does not contest the Bankruptcy Court's finding that its claim was fraudulent. Instead, Tracar contends that the Bankruptcy Court lacked subject matter jurisdiction to appoint the Trustee post-confirmation and, accordingly, any actions taken by the Bankruptcy Court at the behest of the Trustee, specifically, the Or-

der granting the Trustee's motion to expunge Tracar's claims, must be set aside. Tracar also argues that the Trustee's belated attempt to expunge its claims is barred by the doctrine of res judicata. Because the Court agrees with Tracar that the motion to expunge its claims is barred by the doctrine of res judicata, the Court need not, and does not, address Tracar's other argument regarding the appointment of the Trustee

## DISCUSSION

■ Tracar argues that because the Plan unequivocally granted and approved its allowed claims, all parties are now precluded from raising objections to Tracar's claims under the doctrine of res judicata. The Court agrees.[1]

■ It is well-settled that a bankruptcy court's order confirming a reorganization plan constitutes a final judgment on the merits and is to be given preclusive effect under res judicata. *See Stoll v. Gottlieb,* 305 U.S. 165, 170–71, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *see also Sure–Snap Corp. v. State St. Bank and Trust Co.,* 948 F.2d 869, 872–73 (2d Cir.1991) (finding that order confirming plan of reorganization has preclusive effect under res judicata); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir.1990) ("This issue has been settled for some time: a bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits."); *In re Friedberg,* No. 94 Civ. 1569, 1995 WL 733636, at *2 (S.D.N.Y. Dec. 12, 1995) ("A confirmed bankruptcy reorganization plan constitutes a binding contractual arrangement under the doctrine of the law of the case. As such, a confirmed plan

has preclusive effect under res judicata, even against parties who opposed it.") (citations omitted).

The case law, however, recognizes an exception to the res judicata bar where the debtor has reserved the right to object to claims in a plan. The majority of courts that have examined this issue have held that for this exception to apply, the plan must expressly reserve the right to pursue *that particular claim* post-confirmation and that a blanket reservation allowing for an objection to *any claim* is insufficient. *See In re Kelley,* 199 B.R. 698, 704 (9th Cir.BAP1996) ("If a confirmed plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata does not apply.... Even a blanket reservation by the debtor reserving 'all causes of action which the debtor may chose to institute' has been held insufficient to prevent the application of res judicata to a specific action."); *D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York,* No. 95 C 4974, 1996 WL 224517, at *4 (N.D.Ill.1996) ("[A] blanket reservation of rights is insufficient to overcome the res judicata bar to the institution of a post-confirmation lawsuit imposed by a confirmed bankruptcy plan."), *aff'd,* 112 F.3d 257, 261 (7th Cir.1997) ("To avoid res judicata the reservation of a cause of action must be both express, as in writing, and express, as in specifically identified."); *In re County of Orange,* 219 B.R. 543, 564 (Bankr.C.D.Cal.1997) (finding that County was not precluded by res judicata from raising defense which was specifically preserved in Disclosure Statement); *In re S.N.A. Nut Co.,* 197 B.R. 642, 648 (Bankr. N.D.Ill.1996) ("The Plan, however, specifically reserves the right to object to claims

---

1. Because this issue raises purely legal issues, the Bankruptcy Court's decision will be reviewed de novo. *See, e.g., In re Duratech Indus., Inc.,* 241 B.R. 283, 286 (E.D.N.Y. 1999) ("[W]hile a bankruptcy judge's factual findings may not be set aside unless clearly erroneous, a bankruptcy judge's legal conclusions are reviewed de novo.").

of the California Statutory Lien Creditors, and generally preserves the right to commence avoidance actions. Thus, Tulare's res judicata defense is deficient as a matter of law."); *In re Hooker Invs., Inc.,* 162 B.R. 426, 433–34 (Bankr.S.D.N.Y.1993) (discussing relevant case law and finding that "[e]ach of these decisions either expressly or impliedly recognizes that whereas a blanket reservation would not be enough to escape the res judicata bar, an express reservation would").

A minority of courts, however, have held that a plan provision containing a general reservation of "the right to object to claims following confirmation and for extending the time for doing so" is sufficient to overcome the res judicata bar. *See In re Weidel,* 208 B.R. 848, 853 (Bankr.M.D.N.C. 1997) ("The sound rationale expressed by these courts is that under § 1141(a)[2] debtors and creditors are bound by the terms of the plan and a general reservation of the right to object is a valid and binding plan provision.") (collecting cases).

The Second Circuit has not yet ruled on this issue. However in *Sure–Snap,* 948 F.2d 869, the Second Circuit impliedly recognized that should such an exception to res judicata exist, the right to bring the subsequent litigation must be specifically reserved in the confirmed plan. In *Sure–Snap,* the debtors moved post-confirmation to modify their plan so as to preserve their right to bring outstanding claims that had not been raised in the bankruptcy court. *Id.* at 871. The bankruptcy court denied the motion and also denied two subsequent motions for reconsideration. *Id.* At the last hearing, the debtors inquired whether the bankruptcy court's decisions would preclude the bringing of such claims in another forum. *Id.* at 872–73. The bank-

ruptcy court responded that it believed that any such claims were reserved to the debtors as a matter of law. *Id.* at 873.

In deciding the effect of the bankruptcy court's comment, the Second Circuit concluded that "[a]s in [*In re Howe,* 913 F.2d 1138 (5th Cir.1990)], where the reorganization plan explicitly 'reserved [to the debtors] the right to prosecute "any claims of action" which ... were not previously litigated to a final judgment,' *id.* at 1141, and yet the subsequent bringing of the action was still barred, we hold here that the judge's colloquy was not dispositive of appellants' allegedly reserved right." *Id.* "The implication is that had the debtors' right to bring subsequent litigation been reserved expressly in the plan, such post-confirmation litigation would have escaped the res judicata bar." *In re Hooker,* 162 B.R. at 433 (interpreting *Sure–Snap*); *see also D & K Props.,* 1996 WL 224517, at *4 (interpreting *Sure–Snap* to hold that "a colloquy with the court was not sufficient to reserve the plaintiff's right to bring post-confirmation litigation, and implying that, to escape the res judicata bar, the right to bring the subsequent litigation must be expressly reserved in the confirmed plan").

In the instant case, Tracar is defined in the Plan as the holder of two allowed claims: (1) "a perfected, secured claim against the Debtor in the amount of $2,430,115.18 for various loans made to Debtor over a course of years"; and (2) "an unperfected secured claim against the Debtor as guarantor of a note from I.M.A. Fashions, Inc., to Hadiya, upon which I.M.A. Fashions, Inc. defaulted on March 15, 1993 with a balance due in the amount of $4,253,991111.72." (Plan art. 1.34.)

---

2. 11 U.S.C. § 1141(a) provides in relevant part that the "provisions of a confirmed plan bind ... any creditor ...."

The Plan provides for the subordination of Tracar's claims such that all other claims are to be paid in full before Tracar receives any payment. (Aug. 25, 1999 Order at 3; Plan art. 3.7.). In addition, the Plan states:

[Article 3.1]

The Debtor hereby expressly reserves the right to object to and/or oppose the validity, priority, extent, status or allowance of *any claim filed with the Bankruptcy Court,* listed in the Debtor's schedules, or asserted against the Debtor or its property, at any time heretofore or hereafter, and to assert such affirmative defenses, counterclaims and requests for sanctions or hearings conducted under Federal Rule of Bankruptcy Procedure 9011, as appropriate.

. . . .

[Article 8.1]

Objections to Claims shall be filed by the Debtor with the Court, and served upon each holder of each of the Claims to which objections are made at any time prior to forty five (45) days after the Confirmation Date, or within such other time period as may be fixed by the Court.

(Plan arts. 3.1 and 8.1 (emphasis added).)

The Plan was confirmed on March 26, 1996. Over two and one-half years later, and pursuant to Article 8.1 of the Plan, the Bankruptcy Court extended the Trustee's time to file objections to December 4, 1998. (Oct. 30, 1998 Order.) By Order dated June 28, 1999, the Bankruptcy Court expunged the Trustee's claims.

Article 3.1 of the Plan, which provides the Debtor with the right to object to "any claim filed with the Bankruptcy Court" is a blanket reservation because it does not describe with specificity what actions are reserved for post-confirmation determina-tion. Although this language permits the Bankruptcy Court to exercise jurisdiction over post-confirmation objections, it does so subject to the defense of res judicata. *See D & K Props.,* 1996 WL 224517, at *5; *In re Hooker,* 162 B.R. at 433. Because the Court finds the majority approach on this issue to be more consistent with Second Circuit dicta, the Court finds the general reservation contained in Article 3.1 insufficient to escape the res judicata bar. Accordingly, the Court holds that CCI's motion to expunge the claims of Tracar is barred by the doctrine of res judicata.

The Trustee and CCI argue that res judicata does not apply because the Bankruptcy Court could not have been "powerless to address the fraud [Tracar] committed on that Court simply because an Order was entered confirming the Plan containing the fraud before the fraud was discovered." (CCI's Brief at 10.) As an initial matter, the Court notes that it is unclear from the present record exactly when the Trustee first learned that the claims submitted by Tracar might be fraudulent. Objections to these claims were raised pre-confirmation but were resolved by the parties via amendment to the Plan, which provided for the subordination of Tracar's claims. (Aug. 25, 1999 Order at 3.) Apparently, after the appointment of the Trustee, and in connection with the Trustee's investigations into the Debtor, "certain concerns arose over the validity of Tracar's claims" post-confirmation. (*Id.* at 11.) Thus, it is unclear what was known in 1996, when Tracar's claims were first objected to, and what was first learned in 1998, when the Trustee again sought expungement of Tracar's claims. Nonetheless, even assuming that the fraud was not discovered until October 1998, when the Trustee moved for additional time to file objections to Tracar's claims, the Bank-

ruptcy Court was not, as CCI argues, without options to redress the fraud.

■ For example, "[r]es judicata 'does not preclude a litigant from making a direct attack ... upon the judgment before the court which rendered it.' " *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 661 (2d Cir.1997) (quoting *Weldon v. United States,* 70 F.3d 1, 5 (2d Cir.1995)). Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") establishes a means by which a party may mount such a direct attack. Thus, the Trustee may attack the order of confirmation for fraud under Rule 60(b). In fact, the Trustee and CCI urge this Court to affirm the June 28, 1999 Order expunging Tracar's claims pursuant to Rule 60 based upon a finding of fraud upon the court. They argue that the fraud upon the Court was committed: (1) by the Debtor and its counsel in the Plan where it was falsely alleged that Tracar was owed millions of dollars by the Debtor; and (2) by Tracar and its counsel in filing fraudulent proofs of claims. .

Rule 60(b) provides two independent bases to set aside a judgment for fraud. Clause (3) of the Rule provides that a judgment may be set aside for "fraud ..., misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b). The Trustee and CCI concede that this basis of relief is unavailable, however, because the motion to expunge Tracar's claims was not brought within 180 days. *See* Bankruptcy Rule 9023 ("Rule 60 ... applies in cases under the Code except that ... a complaint to revoke an order confirming a plan may be filed only within the time allowed by [11 U.S.C. § ] 1144," i.e., 180 days.). Rather, they rely on the "savings clause" of Rule 60(b) which allows "a court to entertain an independent action

to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the court" so long as the motion is made "within a reasonable time." *Id.* They contend that the 180–day limit of 11 U.S.C. § 1144 does not apply to actions to set aside a judgment based on fraud upon the court.

The flaw with this argument is that, as the parties conceded during oral argument before the undersigned, the Bankruptcy Court never found that a "fraud upon the court" existed. Rather, the Bankruptcy Court disallowed Tracar's claims based upon a general finding of fraud. (June 4, 1999 Transcript of the Motion by Trustee for an Order to Expunge Tracar's Claims at 11 ("This is not a hearing on fraud on the Court. This is a hearing on an objection to claims which may result in such evidence that another adversary proceeding or a motion or whatever will ensue.").); *see also Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1325 (2d Cir.1995) ("[F]raud upon the court as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication. The concept of fraud on the court embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.") (citations and internal quotation marks omitted). It may very well be that the record below supports a finding of fraud upon the Court, however, that issue was never presented to the Bankruptcy Court. Thus, there is presently no decision under Rule 60(b) for the Court to review.[3]

---

**3.** The Court makes no ruling on whether an action to expunge Tracar's claims based on a fraud upon the court would be timely. This

issue can be decided by the Bankruptcy Court if and when the Trustee and/or CCI decide to pursue such a proceeding.

■ In addition, as suggested by the Trustee in its brief on appeal, "the Bankruptcy Court may, at its discretion, chose to reopen the case pursuant to [11 U.S.C. § ] 350(b). Once this has happened, it may properly reconsider a claim under [11 U.S.C. § ] 502(j) [ ('Section 502(j)') ]." (Trustee's Brief at 41.) Section 502(j) provides, in pertinent part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause." Thus, this section may provide another possible avenue for the Trustee to pursue in seeking to expunge Tracar's claims.

■ Finally, to the extent the Debtor may have been involved in the fraud committed by Hadiya/ Tracar in the filing of false claims, the Bankruptcy Court could have converted the case to a Chapter 7 pursuant to 11 U.S.C. § 1112(b). *See, e.g., In re Coffee Cupboard, Inc.,* 119 B.R. 14, 17 (E.D.N.Y.1990) ("Code Section 1112(b) provides for the conversion or dismissal of a Chapter 11 proceeding, whichever is in the best interests of the creditors and the estate, if cause is established. 'Cause' is enumerated in nine non-exclusive categories, and may also be established by the filing and maintaining of a Chapter 11 case without good faith.").

In sum, the Court finds that assuming that the parties first learned of the fraudulent nature of Tracar's claims in 1998, when the Trustee sought to expunge these claims for the second time, the Bankruptcy Court was not without options to redress the fraud. Because the Trustee's motion to expunge Tracar's claims is barred by the doctrine of res judicata, the Order of June 28, 1999 granting that motion is reversed.

*APP's Appeal of the March 21, 1997 Order*

On January 28, 2000, the Court ruled that it would examine the propriety of the proposed settlement between CCI and APP prior to deciding APP's appeal of Judge Conrad's March 21, 1997 Order. The Court indicated, however, that it would decide the instant appeal first as it raised a threshold issue as to whether the Bankruptcy Court had the authority to appoint a post-confirmation trustee, who later entered into a settlement on the Debtor's behalf. Because the Court has held that the resolution of that issue is not necessary for the disposition of the instant appeal, the parties are directed to advise the Court, by letters no longer than three (3) pages in length and to be submitted on or before April 7, 2000, whether the issue of the Bankruptcy Court's jurisdiction to appoint a post-confirmation trustee is raised on any other appeal presently pending before the Court. The stay on (1) CCI's appeal of Judge Conrad's March 21, 1997 Order, and (2) final approval of the proposed settlement between CCI and APP, shall continue pending further notice by the Court.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court's June 28, 1999 Order is **REVERSED** and the Clerk of the Court is directed to close this case. The matter is remanded to the Bankruptcy Court for such further action as the Bankruptcy Court deems appropriate consistent with this decision

**SO ORDERED.**